Michael F. Ram (SBN 104805)
Email:  mram@rocklawcal.com
Susan S. Brown (SBN 287986)
Email:  sbrown@rocklawcal.com
RAM, OLSON, CEREGHINO & KOPCZYNSKI
555 Montgomery Street, Suite 820
San Francisco, CA  94111
Telephone:  415-433-4949
Facsimile:  415-433-7311

Richard Alexander (SBN 48432)
Annie Wu (SBN 234582)
Email:  info@alexanderlaw.com
ALEXANDER LAW GROUP
111 W. Saint John Street, Suite 700
San Jose, CA  95113
Telephone:  408-289-1776
Facsimile:  408-287-1776

*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRAIG R. DUTTWEILER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TRIUMPH MOTORCYCLES (AMERICA) LTD, a Georgia corporation, DOES 1-100,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><br>**DEMAND FOR JURY TRIAL** |

## NATURE OF THE CASE

1. Plaintiff, Mr. Craig Duttweiler, brings this action on behalf of himself and a nationwide class of all similarly situated persons.

2. Defendant Triumph's 2006, 2007, 2008, and certain 2009 Triumph Daytona 675 and Street Triple 675 motorcycles (the "Class Motorcycles") suffer from a systemic dangerous safety defect that makes the drop linkage plates (the "Plates") vulnerable to elongation, distortion, cracking, fracture, and failure (the "Suspension Defect").

3. The Suspension Defect was present when the Class Motorcycles were sold.

4. The Plates are an integral part of the Class Motorcycles' suspension system. Failure of the Plates causes the rear of the Class Motorcycles to collapse onto the rear wheel while the rider is operating the motorcycle. This in turn causes catastrophic locking up of the rear wheel, resulting in loss of control of the motorcycle, threatening the safety of the motorcycle's rider and others.

5. Triumph knows that the Class Motorcycles suffer from this Suspension Defect and has actively concealed and failed to disclose this Suspension Defect to Plaintiff and the proposed Class members both at the time of purchase and after.

6. Despite notice of the Suspension Defect from numerous customer complaints, Triumph has not recalled the Class Motorcycles to repair the safety defect, has not offered its customers a suitable repair or replacement free of charge, and has not offered to reimburse customers who incurred costs relating to replacing Plates or repairing damage caused by the Suspension Defect.

7. As a result of the Suspension Defect, Plaintiff and the members of the proposed Class have been exposed to dangerous driving conditions and have suffered damages. Plaintiff and the members of the proposed Class have suffered injury in fact, including economic damages, and have lost money or property. Plaintiff therefore brings claims for violations of consumer protection statutes as well as for unjust enrichment.

///

///

## PARTIES

8. Plaintiff, Craig Duttweiler, is a California citizen who resides in San Mateo County, California. On April 28, 2007, Mr. Duttweiler purchased a new 2007 Triumph Daytona 675 from Munroe Motors, Inc., an authorized Triumph dealer in San Francisco, California.

9. On February 1, 2014, Mr. Duttweiler was traveling on the highway at approximately 60-65 miles per hour when the Plates on his Motorcycle failed, causing the rear of the Motorcycle to collapse onto the rear wheel. The wheel seized, and the bike became uncontrollable, fishtailed, and skidded onto the soft shoulder, narrowly avoiding oncoming traffic. Mr. Duttweiler was thrown from the Motorcycle. He suffered injuries and was transported by ambulance to a nearby hospital, where he was treated.

10. Defendant Triumph (America) Ltd. ("Triumph") is a corporation organized under the laws of Georgia and headquartered in Atlanta, Georgia. Triumph is the US sales, marketing, and distribution subsidiary of its British parent company, Triumph Motorcycles Ltd.

## JURISDICTION AND VENUE

11. This is a proposed class action.

12. Members of the proposed Class are citizens of California and the United States. Plaintiff is informed and believes that more than two-thirds of the proposed Class members are citizens of states different from the home state(s) of Triumph.

13. The aggregate claims of the individual Class members exceed the sum or value of $5,000,000, exclusive of interest and costs.

14. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d).

15. Triumph intentionally avails itself of the markets within California through the promotion, sale, marketing, and distribution of its motorcycles and has sufficient minimum contacts in California that it is subject to personal jurisdiction here. Triumph is deemed to reside in this District pursuant to 28 U.S.C. § 1391(c)

16. Venue is proper in this District under 28 U.S.C. §1391(a).

## SUBSTANTIVE ALLEGATIONS

17. For at least 20 years, Triumph has marketed, distributed, sold, and warranted motorcycles in the United States. Plaintiff is informed and believes that Triumph has sold – directly or indirectly through authorized dealers and other retailers – tens, if not hundreds, of thousands of motorcycles nationwide.

18. Triumph widely advertises its motorcycles as "reliable, engaging and useable" "precision instruments," "engineered to cope…conquering miles, varied terrain and obstacles in your path."

19. Triumph users purchase their motorcycles reasonably expecting that the suspension will work properly for the life of the vehicle.

**The Suspension Defect**

20. Drop linkage plates comprise an integral part of the Class Motorcycles' suspension systems. They are triangular metal plates that support the rear of the motorcycle, allowing for shock absorption and handling. Each Class Motorcycle comes with one on either side.

21. Triumph's 2006, 2007, 2008, and certain 2009 Triumph Daytona 675 and Street Triple 675 motorcycles (the "Class Motorcycles") come equipped with defective cast aluminum Plates that warp, crack, fracture, and fail with ordinary use.

22. Between 2007 and 2014, numerous Class Motorcycle owners published online accounts of crashes, motorcycle damage, and injuries as a result of the Plates failing. Rider accounts of the failure of the Plates describe sudden loss of control of their motorcycles while driving, and subsequent discovery that the Plates have sheared off or fractured, dropping the rear of the motorcycle onto the back wheel:

- On June 16, 2007, one owner reported, "[t]he drop link plate (the two triangle shaped plates) broke on the rear suspension. The plates look too thin. The mounting of the plate is also weak on the inside. . . I'm sure when they lab tested

this plate they had the plates bolted better than it is on the bike. The rear upper corner of the plate is what ripped apart."

- On the next day, another owner reported, "I broke my bike in the same exact spot [the Plates]. I hit the grand canyon of potholes and when I came out the other side I was basically sitting on the rear tire. It set the battery box on my back tire, but I was able to pull off the road without wrecking."

- On November 9, 2008, another owner reported, "I have had that piece of [expletive] break… TWICE…. On TWO separate bikes!!! I constructed my own bracket from steel by using the stock pieces as the template….When you get a chance just take a look at any other sport bike's linkage, it'll be a ton more "beefy" than the fragile linkage on the triumph [sic]."

- On June 20, 2008, the owner of a 2007 Daytona Street Triple 675 reported, "I had it out one night and was accelerating moderately hard onto the highway when I hit a big pothole….The bike instantly bogged down. I thought I stalled it or popped a tire because it wouldn't accelerate, so I pulled to the shoulder. It wouldn't accelerate because the rear bracket and muffler were hitting the rear tire (and the fairing was touching the ground). Turns out the drop link plates to the lowering link snapped. All four points sheared off."

- On May 20, 2013, the owner of a 2009 Daytona 675 reported, "I was going about 50 around a turn, heard/felt a clunk and the rear tire locked up…almost high-sided me to the right. All I could do was ride it to the ditch and not lock the front….I sent [Triumph] a message through Facebook."

- On September 18, 2013, the owner of a 2007 Daytona 675 reported, "I am posting this message as a recommendation to inspect and or replace the bracket if you have a 06 or 07 daytona 675. This year I was riding a favorite mt. highway with lots of good corners. On the exit of a turn to the right I felt the back of the bike sink down and when I went to turn back into the left, I was unable to as the bike was locked straight ahead. I ran off the road and thought I had it under control

until I hit a natural drain which drove my helmet into the tank…light concussion and severe bruising to my forehead where the helmet saved me from worse….In getting the bike back to the road the first thing noticed was the rear section sitting on the tyre and then as we looked around we found the broken bracket…. I feel I was very lucky to escape a much worse potential outcome."

23. Multiple customers have reported these incidents to Triumph. Triumph is fully aware of the Suspension Defect. In fact, at some point during 2009, Triumph corrected the Suspension Defect by switching from the defective cast aluminum Plates to milled steel plates.

24. At no time, however, did Triumph notify its customers about the Suspension Defect, conduct a recall, or offer any form of repair or replacement at its expense.

25. Instead, Triumph has actively concealed the existence and nature of the Suspension Defect from Plaintiff and members of the Class both at the time of purchase and after. Specifically, Triumph has:

    a. failed to disclose the Suspension Defect at the time of purchase or repair; and

    b. actively concealed that the Class Motorcycles' Plates are defective, despite learning of such defects through consumer complaints as early as 2007.

26. Plaintiff and members of the Class have suffered injury-in-fact through damage to the Class Motorcycles caused by the Suspension Defect; cost of repairs; and having paid more than they would have for the Class Motorcycles had Triumph not concealed the Suspension Defect.

27. Triumph has not recalled the Class Motorcycles to repair the Suspension Defect, nor has it offered to its customers a suitable repair or replacement free of charge, or reimbursement for costs incurred relating to repairs.

**The Suspension Defect Poses an Unreasonable Safety Hazard**

28. The Suspension Defect presents a safety hazard, exposing riders and others to significant risk of injury or death. Triumph has an obligation and duty to advise the public of the potential danger, and take appropriate action to remedy the Suspension Defect. Plaintiff and any objectively reasonable consumer expected that Triumph would notify them of the Suspension

Defect. Plaintiff and reasonable consumers further expected that Triumph would not sell them Class Motorcycles with known safety defects such as this Suspension Defect.

29. The Suspension Defect poses an unreasonable safety risk for Class members as well as drivers, passengers, and pedestrians sharing the road with the Class Motorcycles. When it manifests, the Suspension Defect can cause catastrophic locking of the rear wheel and loss of control of the Class Motorcycles, unreasonably increasing the risk of collisions, injury, and death.

30. Whether the suspension system is defective is information that any reasonable consumer would consider material in deciding whether to purchase a motorcycle.

31. Had Plaintiff and the Class members known of the Suspension Defect, they would not have bought the Class Motorcycles or would have paid a much lower price to purchase them.

32. As a result of Triumph's conduct, Plaintiff and Class members purchased motorcycles they otherwise would not have purchased, paid more for the Class Motorcycles then they would have paid, and/or unnecessarily paid repair and/or replacement costs.

**Tolling of the Statute of Limitations**

33. Since the Suspension Defect cannot be detected until it manifests, Plaintiff and the Class members were not reasonably able to discover the problem until long after purchasing their Class Motorcycles, despite their exercise of due diligence. Nor could Plaintiff and the Class members reasonably be expected to learn that they were deceived and deprived of material information concerning the Suspension Defect until the Suspension Defect manifested. Therefore, the discovery rule applies to Plaintiff and the Class members' claims.

34. Mr. Duttweiler is informed and believes that Triumph has known about the Suspension Defect since at least 2007 and has concealed it from its customers. Triumph's concealment of these facts tolls any applicable statute of limitations, and estops Triumph from relying on them.

**Plaintiff's Experience**

35. On or about April 28, 2007, Mr. Duttweiler purchased a new Triumph Daytona 675 from Munroe Motors, Inc., an authorized Triumph dealer in San Francisco, California (The "Motorcycle").

36. On February 1, 2014, with about 17,400 miles on his Motorcycle, Mr. Duttweiler was traveling on a highway under clear conditions with a group of fellow motorcycle enthusiasts at approximately 60-65 miles per hour when the Plates on his Motorcycle failed.

37. The rider behind Mr. Duttweiler observed Mr. Duttweiler travel over a minor bump in the road, then saw the rear of the Motorcycle collapse onto the back tire. The rear wheel of the Motorcycle seized, causing the bike to become uncontrollable. The Motorcycle fishtailed dangerously close to oncoming traffic, and skidded onto the soft shoulder, where it traveled approximately 1,000 feet. Mr. Duttweiler was thrown from the Motorcycle. He suffered injuries and was transported by ambulance to a nearby hospital, where he was treated.

38. Upon visual inspection, it was apparent that the Plates on the Motorcycle had fractured and broken into pieces, and that the holes through which the Plates are bolted to the Motorcycle had become distended and elongated prior to fracturing.

39. Mr. Duttweiler promptly contacted Triumph to notify it of these events and arranged for Triumph to inspect the Motorcycle.

40. On or about April 16, 2014, Triumph representatives and an engineer retained by Triumph inspected the Motorcycle at a Triumph dealership in Mountain View, California, with Mr. Duttweiler present. During the course of that inspection, the engineer told Mr. Duttweiler that the Plates were defective and that the material used – a cast aluminum – was likely too brittle and not sufficiently ductile for the Plates' purpose.

41. Despite this, Triumph refused to admit any liability and refused to cover the full cost of repairs to Mr. Duttweiler's Motorcycle.

42. Since then, Triumph has failed to take any steps to notify customers of the Suspension Defect, conduct a recall, or otherwise repair or replace the Defective Plates at its expense.

/ / /

/ / /

/ / /

/ / /

## CLASS ACTION ALLEGATIONS

43. Mr. Duttweiler brings this action on behalf of himself and a class of persons initially defined as follows:

> (i) All persons in the United States who are current owners of a 2006, 2007, 2008, or 2009 Triumph Daytona 675 or Triumph Street Triple 675 motorcycle, and all former owners of a 2006, 2007, 2008, or 2009 Triumph Daytona 675 or Triumph Street Triple 675 motorcycle (the "Class") who paid for repairs or whose motorcycles were damaged as a result of the Suspension Defect as defined herein; and
>
> (ii) all members of the Class who are consumers as defined by Civ. Code § 1761 (the "CLRA Subclass").
>
> Excluded from the Class and the CLRA Subclass are: Defendant; any entity in which Defendant has a controlling interest or which has a controlling interest in Defendant; Defendant's legal representatives, assigns, and successors. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family and the judge's clerks assigned to the case. Claims for personal injury are expressly excluded from the recovery sought by this class action.

44. <u>Numerosity:</u> Although the exact number of Class members is uncertain and can only be ascertained through appropriate discovery, the number is in the thousands, if not tens of thousands, and is great enough that joinder is impracticable.

45. <u>Existence and Predominance of Common Questions</u>: Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual Class members. These common questions include the following:

    a. whether the Class Motorcycles suffer from the Suspension Defect;

    b. whether the Suspension Defect constitutes an unreasonable safety risk;

    c. whether Triumph knew about the Suspension Defect, and if so, how long Triumph has known about it;

    d. whether the Suspension Defect constitutes a material fact to the reasonable objective consumer;

    e. whether Triumph has a legal duty to disclose the Suspension Defect to Plaintiff and Class members;

f. whether Triumph fraudulently concealed from or failed to disclose to Plaintiff and the Class the inherent problem with the Class Motorcycles;

g. whether as a result of Triumph's concealment of or failure to disclose material facts, Plaintiff and the Class acted to their detriment by purchasing the Class Motorcycles;

h. whether Triumph failed to adequately warn Plaintiff and the Class about the limitations of the Class Motorcycles;

i. whether Triumph engaged in unfair competition or unlawful, unfair and deceptive acts or practices when it concealed these material facts and failed to warn Plaintiff and the Class of the Suspension Defect;

j. whether Triumph's conduct in importing, distributing, marketing, and selling the Class Motorcycles constitutes a violation of the Consumers Legal Remedies Act, Civ. Code § 17500 *et seq.*;

k. whether Triumph's conduct in importing, distributing, marketing, and selling the Class Motorcycles constitutes a violation of the Unfair Competition Law, Business & Professions Code § 17200 *et seq.*;

l. whether Plaintiff and the Class are entitled to compensatory, exemplary, and statutory damages and the amount of such damages; and

m. whether Triumph should be ordered to disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale of the Class Motorcycles.

46. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the Class because, among other things, Plaintiff purchased a Motorcycle with the same Suspension Defect found in the Class Motorcycles.

47. <u>Adequacy</u>:  Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the members of the Class he seeks to represent. Plaintiff has retained counsel competent and experienced in consumer class actions, with an emphasis on motor vehicles, and he intends to prosecute this action vigorously. Plaintiff and his counsel will fairly and adequately represent the interests of members of the Class.

48. <u>Superiority</u>: The class action device is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each Class member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Triumph economically feasible. Even if Class members themselves could afford such individualized litigation, the court system could not. In addition to the burden and expense of managing myriad actions arising from the Suspension Defect, individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation would also increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

49. In the alternative, the Class may be certified because:

   a. the prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with the respect to individual Class members, which would establish incompatible standards of conduct for Triumph;

   b. the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

   c. Triumph has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

## FIRST CAUSE OF ACTION

**(Violation of the Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.*)**

50. Mr. Duttweiler realleges each allegation set forth above.

51. Triumph is a "person" under Cal. Civ. Code section 761(c).

52. Plaintiff and the members of the CLRA Subclass are "consumers" under Cal. Civ. Code section 1761.

53. Plaintiff and the members of the CLRA Subclass engaged in "transactions" under Cal. Civ. Code section 1761(e), including the purchase of the Class Motorcycles from Triumph.

54. Triumph violates sections 1770(a)(5) and (a)(7) of the CLRA in that: (a) Triumph represents that its goods have sponsorship, approval, characteristics, uses, or benefits that they do not have; and (b) Triumph represents that its goods are of a particular standard, quality, or grade, but are of another.

55. The Suspension Defect is material to the reasonable objective consumer. Plaintiff and other CLRA Subclass members were unaware of the Suspension Defect when they purchased the Class Vehicles. Triumph violated the Consumers Legal Remedies act by, among other things, failing to disclose at the point of sale or otherwise, that the Plates are defective and pose a serious safety hazard.

56. Triumph had a duty to disclose the Suspension Defect for various reasons, including that:

    a. the Suspension Defect poses a serious safety hazard;

    b. the Suspension Defect is contrary to Triumph's representations and consumers' expectations;

    c. Triumph's concealment of the Suspension Defect was likely to deceive reasonable consumers;

    d. Triumph intentionally concealed the Suspension Defect with the intent to defraud consumers; and

    e. Triumph's concealment of the Suspension Defect harmed Plaintiff and other CLRA Subclass members.

57. Had Triumph adequately disclosed information about the Suspension Defect, Plaintiff, the members of the CLRA Subclass, and any reasonable consumer would not have bought a Class Motorcycle, or they would have paid far less for a Motorcycle that is unsafe.

58. More than 30 days before filing this Complaint, Plaintiff complied with the requirements of California Civil Code §1782, *et seq.*, by sending a letter to Defendant demanding that it repair the Suspension Defect and deceptive practices. Triumph has so far failed to do so.

59. As a result of Triumph's practices, Plaintiff and the other members of the CLRA Subclass have suffered harm.

60. These violations of the California Civil Code were wilful and oppressive. Plaintiff and the CLRA Subclass are therefore entitled to punitive damages.

61. Pursuant to the provisions of Cal. Civ. Code § 1780, Plaintiff seeks an order enjoining Triumph from the unlawful practices described here, a declaration that Triumph's conduct violates the CLRA, actual and punitive damages, and attorneys' fees and costs of litigation.

## SECOND CAUSE OF ACTION
**(Unlawful Business Practices in Violation of California Business and Professions Code §17200 *et seq.*)**

62. Mr. Duttweiler realleges each allegation set forth above.

63. Triumph's acts and practices, as alleged in this Complaint, constitute unlawful business practices that violate the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*

64. These practices include failing to disclose at the point of sale or otherwise that the Class Motorcycles have defective Plates.

65. Triumph engaged in unlawful business practices by violating the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*

66. As a direct and proximate result of Triumph's unlawful business practices as alleged herein, Plaintiff and the Class suffered injury-in-fact and lost money or property, in that they purchased motorcycles they would not otherwise have purchased, paid for repairs or replacements, and/or are left with Class Motorcycles of diminished value and utility because of

the Suspension Defect. Meanwhile Triumph has sold more Class Motorcyles than it otherwise could have and charged inflated prices for Class Motorcycles, unjustly enriching itself thereby.

67.  Plaintiff and Class members are entitled to equitable relief, including restitution of all fees, disgorgement of all profits accruing to Triumph because of its unlawful practices, attorneys' fees and costs, declaratory relief, and a permanent injunction enjoining Triumph from its unfair, unlawful, fraudulent, and deceitful activity.

### THIRD CAUSE OF ACTION

**(Unfair Business Practices in Violation of California Business and Professions Code §17200 *et seq.*)**

68.  Mr. Duttweiler realleges each allegation set forth above.

69.  Triumph's acts and practices, as alleged in this Complaint, constitute unfair business practices that violate the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*.

70.  Triumph's unfair business practices include engaging in conduct that:

a.  is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and the members of the Class;

b.  undermines or violates the stated policies underlying the CLRA; and

c.  causes a substantial injury to consumers, not outweighed by any countervailing benefits to consumers or to competition, which the consumers could not have reasonably avoided.

71.  As a direct and proximate result of Triumph's unfair business practices as alleged herein, Plaintiff suffered injury-in-fact and lost money or property, in that they purchased motorcycles they would not otherwise have purchased, paid for repairs or replacements, and/or are left with Class Motorcycles of diminished value and utility because of the Suspension Defect. Meanwhile Triumph has sold more Class Motorcycles than it otherwise could have and charged inflated prices for Class Motorcycles, unjustly enriching itself thereby.

72. Plaintiff and Class members are entitled to equitable relief, including restitution of all fees, disgorgement of all profits accruing to Triumph because of its unfair business practices, attorneys' fees and costs, declaratory relief, and a permanent injunction enjoining Triumph from its unfair, unlawful, fraudulent, and deceitful activity.

### FOURTH CAUSE OF ACTION
**(Fraudulent Business Practices in Violation of California Business and Professions Code §17200 *et seq.*)**

73. Mr. Duttweiler realleges each allegation set forth above.

74. Triumph's acts and practices, as alleged in this Complaint, constitute fraudulent business practices that violate the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*.

75. Triumph's fraudulent business practices include engaging in conduct that was and is likely to deceive consumers acting reasonably under the circumstances.

76. As a direct and proximate result of Triumph's fraudulent business practices as alleged herein, Plaintiff and the Class suffered injury-in-fact and lost money or property, in that they purchased motorcycles they would not otherwise have purchased, paid for repairs or replacements, and/or are left with Class Motorcycles of diminished value and utility because of the Suspension Defect. Meanwhile Triumph has sold more Class Motorcyles than it otherwise could have and charged inflated prices for Class Motorcyles, unjustly enriching itself thereby.

77. Plaintiff and Class members are entitled to equitable relief, including restitution of all fees, disgorgement of all profits accruing to Triumph because of its fraudulent and deceptive practices, attorneys' fees and costs, declaratory relief, and a permanent injunction enjoining Triumph from its unfair, unlawful, fraudulent, and deceitful activity.

### FIFTH CAUSE OF ACTION
**(Unjust Enrichment)**

78. Mr. Duttweiler realleges each allegation set forth above.

79. Triumph has been, and continues to be, unjustly enriched, to the detriment of and at the expense of Plaintiff and the Class members, as a result of its conduct directed at Plaintiff

and the Class as a whole, including the collection of money from the sale of the defective Class Motorcycles and the avoidance of or refusal to incur expenses associated with repair of the Class Motorcycles.

80. Accordingly, Triumph should not be allowed to retain the proceeds from the benefits Plaintiff and the Class members have conferred upon it. Plaintiff therefore seeks disgorgement of Triumph's unjustly acquired profits and other monetary benefits resulting from its unlawful conduct, and seeks restitution for the benefit of Plaintiff and Class members, in such equitable and efficient fashion as the Court deems just and proper.

81. Plaintiff and the Class are entitled to the imposition of a constructive trust upon Triumph such that its unjust benefit and ill-gotten gains may be allocated and distributed equitably by the Court to and for the benefit of Plaintiff and the Class members.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on his own behalf and on behalf of the Class, prays for an order:

a. certifying the Class and appointing Plaintiff and his counsel to represent the Class;
b. awarding Plaintiff and the members of the Class actual and punitive damages,
c. awarding Plaintiff and the members of the Class restitution or other equitable relief as the Court deems proper;
d. enjoining Triumph from continuing to engage in unlawful business practices as alleged here;
e. awarding Plaintiff and the members of the Class pre- and post-judgment interest;
f. awarding Plaintiff and the members of the Class reasonable attorneys' fees and costs of suit; and
g. such other and further relief as this Court may deem just and proper.

/ / /

/ / /

/ / /

/ / /

**DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury of any and all issues in this action so triable of right.

Dated: October 29, 2014     By:     */s/ Michael F. Ram*

Michael F. Ram (SBN 104805)
Email: mram@rocklawcal.com
Susan S. Brown (SBN 287986)
sbrown@rocklawcal.com
RAM, OLSON, CEREGHINO & KOPCZYNSKI
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: 415-433-4949
Facsimile: 415-433-7311

Richard Alexander (SBN 48432)
Annie Wu (SBN 234582)
Email: info@alexanderlaw.com
ALEXANDER LAW GROUP
111 W. Saint John Street, Suite 700
San Jose, CA 95113
Telephone: 408-289-1776
Facsimile: 408-287-1776

*Attorneys for Plaintiffs and the Proposed Class*

N:\Docs\1387-01 Triumph\Pleadings\Complaint-Triumph-FINAL.doc