Michael F. Ram (SBN 104805)
Email: mram@rocklawcal.com
Susan S. Brown (SBN 287986)
Email: sbrown@rocklawcal.com
RAM, OLSON, CEREGHINO & KOPCZYNSKI
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: 415-433-4949
Facsimile: 415-433-7311

Richard Alexander (SBN 48432)
Annie Wu (SBN 234582)
Email: info@alexanderlaw.com
ALEXANDER LAW GROUP
111 W. Saint John Street, Suite 700
San Jose, CA 95113
Telephone: 408-289-1776
Facsimile: 408-287-1776

*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRAIG R. DUTTWEILER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TRIUMPH MOTORCYCLES (AMERICA) LTD, a Georgia corporation, DOES 1-100,<br><br>Defendants. | Case No.  3:14-cv-04809-JSW<br><br>CLASS ACTION<br><br>**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date:   June 18, 2015<br>Time:   2:00 p.m.<br>Place:  Courtroom 15<br>Judge:  Hon. Haywood S. Gilliam, Jr.<br>San Francisco, CA<br><br>Complaint Filed:  October 29, 2014 |

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.  ISSUES ............................................................................................................. 2

III. FACTS ............................................................................................................... 3

IV.  PROCEDURAL HISTORY ............................................................................... 4

V.   LEGAL STANDARD ......................................................................................... 4

VI.  ARGUMENT ..................................................................................................... 5

     A.   Plaintiff's Fraud-Based Allegations Satisfy Federal Rule 9(b) ............ 5

          1.   Mr. Duttweiler has adequately alleged reliance ..................... 8

          2.   Mr. Duttweiler has also adequately alleged reliance by alleging a material omission ................................................. 10

          3.   Mr. Duttweiler adequately alleged Triumph's knowledge of the defect ..................................................................... 10

     B.   Mr. Duttweiler has sufficiently stated a claim under the CLRA .......... 13

     C.   Mr. Duttweiler has sufficiently stated claims under the UCL .............. 14

          1.   Plaintiff alleges that Triumph engaged in unfair business practices ........ 14

          2.   Plaintiff alleges that Triumph engaged in unlawful business practices ................................................................. 15

          3.   Plaintiff alleges that Triumph engaged in fraudulent business practices ................................................................. 15

          4.   Mr. Duttweiler can properly claim both UCL equitable relief and damages ................................................................. 15

     D.   Mr. Duttweiler sufficiently pleads an omissions-based FAL claim ...... 17

     E.   Mr. Duttweiler has sufficiently stated a negligence claim .................. 18

          1.   Plaintiff's negligence claim, which meets the heightened pleading standard for fraud, does not need to do so ................. 18

          2.   Triumph owes a duty of care to Plaintiff ................................ 20

     F.   Mr. Duttweiler has sufficiently stated a claim of fraudulent concealment ........... 21

     G.   Mr. Duttweiler's claims are timely ...................................................... 21

VII. CONCLUSION .................................................................................................. 23

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*Anderson v. Owens-Corning Fiberglas Corp.*
   53 Cal.3d 987 (1991)................................................................................2, 13, 20

4

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009) ...............................................................................4, 12

5

6

*Baggett v. Hewlett-Packard Co.*
   582 F. Supp. 2d 1261 (C.D. Cal. 2007).............................................................8

7

*Bardin v. Daimlerchrysler Corp.*
   136 Cal. App. 4th 1255 (2006)......................................................................14

8

9

*Berenblat v. Apple, Inc.*
2009 WL 2591366 (N.D. Cal., 2010)..............................................................12

10

*Bly-Magee v. California*
   236 F.3d 1014 (9th Cir. 2001).......................................................................5

11

12

*Bristol-Myers Squibb v. Superior Court*
   32 Cal.App.4th 959 (1995)..........................................................................21

13

*Camacho v. Auto. Club of S. California*
   142 Cal. App. 4th 1394 (2006)......................................................................14

14

15

*Carlon v. Thaman (In re NationsMart Corp. Sec. Litig.)*
   130 F.3d 309 (8th Cir. 1997)........................................................................19

16

*Chamberlan v. Ford Motor Co.*
   314 F. Supp. 2d 953 (N.D. Cal. 2004)........................................................1, 21

17

18

*Clark v. LG Electronics U.S.A., Inc.*
2013 WL 5816410 (S.D. Cal. 2013) .........................................................2, 9, 10

19

*Colgan v. Leatherman Tool Grp., Inc.*
   135 Cal. App. 4th 663 (2006)........................................................................13

20

21

*Cousins v. Lockyer*
   568 F.3d 1063 (9th Cir. 2009).....................................................................4, 23

22

*David K. Lindemuth Co. v. Shannon Financial Corp.*
   637 F.Supp. 991 (N.D. Cal. 1986)................................................................5, 7

23

24

*Davis v. Ford Motor Credit Co.*
   179 Cal. App. 4th 581 (2009).......................................................................14

25

*Dorfman v. Nutramax Labs, Inc.*
2013 WL 5353043 (S.D. Cal. Sept. 23, 2013) ................................................13

26

27

*Doyle v. Chrysler Grp. LLC*
2014 WL 3361770 (C.D. Cal. July 3, 2014) ...................................................10

28

*Elias v. Hewlett-Packard Co.*
2014 WL 493034 (N.D. Cal. 2014) ................................................................. 12

*Falk v. General Motors Corp.*
496 F.Supp.2d 1088 (N.D.Cal.2007) ......................................................... passim

*Gray v. Toyota Motor Sales, USA*
2012 WL 313703 (C.D. Cal. 2012) .................................................................. 6

*Grodzitsky v. Am. Honda Motor Co.*
2013 WL 2631326 (C.D. Cal. June 12, 2013) .............................................. 10

*Hernandez v. Badger Constr. Equip. Co.*
28 Cal. App. 4th 1791 (1994) ...................................................................... 2, 9

*Herron v. Best Buy*
924 F.Supp.2d 1161 (E.D. Cal. 2013) ............................................................ 6

*Hinojos v. Kohl's Corp.*
718 F.3d 1098 (9th Cir. 2013) ...................................................................... 16

*In re Apple In-App Purchase Litig.*
855 F. Supp. 2d 1030 (N.D. Cal. 2012) .......................................................... 5

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*
903 F.Supp.2d 942 (S.D. Cal. 2012) ........................................................ 16, 17

*In re Tobacco II Cases*
46 Cal. 4th 298 (2009) ...................................................................... 10, 15, 16

*Johnson v. Harley-Davidson Motor Co. Grp., LLC*
2011 WL 3163303 (E.D. Cal. July 22, 2011) ............................................. 6, 20

*Keegan v. Am. Honda Motor Co.*
284 F.R.D. 504 (C.D. Cal. 2012) ............................................................. 10, 13

*Kowalsky v. Hewlett-Packard Co.*
2011 WL 3501715 (N.D. Cal. 2011) ............................................................. 11

*Kwikset v. Superior Court*
51 Cal.4th 310 (2011) ................................................................................. 17

*Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*
238 F.3d 363 (5th Cir. 2001) ....................................................................... 19

*Lunghi v. Clark Equipment Co.*
153 Cal.App.3d 485 (1984) ........................................................................ 2, 9

*MacDonald v. Ford Motor Co.*
2014 WL 1340339 (N.D. Cal. 2014) ............................................................... 8

*Marolda v. Symantec Court*
672 F. Supp. 2d 992 (N.D. Cal. 2009) ........................................................... 7

*McAdams v. Monier, Inc.*
182 Cal. App. 4th 174 (2010) ...................................................................... 13

*Morgan v. Wallaby Yogurt Co., Inc.*
    2014 WL 1017879 (N.D. Cal. Mar. 13, 2014) ...................................................................14

*Mui Ho v. Toyota Motor Corp.*
    931 F. Supp. 2d 987 (N.D. Cal. 2013).................................................................1, 20, 21

*Murphy v. DirecTV, Inc.*
    724 F.3d 1218 (9th Cir. 2013)...........................................................................................16

*Orkin Exterminating Co. v. F.T.C.*
    849 F.2d 1354 (11th Cir. 1988)........................................................................................14

*Outboard Marine Corp. v. Superior Court*
    52 Cal. App. 3d 30 (Ct. App. 1975) ................................................................................14

*Overton v. Bird Brain, Inc.*
    2012 WL 909295 (C.D. Cal. Mar. 15, 2012) .....................................................................8

*Parks Sch. of Bus., Inc. v. Symington*
    51 F.3d 1480 (9th Cir. 1995)...............................................................................................5

*Roberts v. Electrolux Home Products, Inc.*
    2013 WL 7753579 (C.D. Cal. 2013)..............................................................................2, 9

*Rosa v. City of Seaside*
    675 F.Supp.2d 1006 (N.D.Cal. 2009).................................................................2, 13, 20

*Schnall v. Hertz Corp.*
    78 Cal. App. 4th 1144 (2000)............................................................................................14

*Smith v. Allstate Ins. Co.*
    160 F.Supp. 2d 1150 (S.D. Cal. 2001) ..........................................................................5, 23

*Snyder v. Ford Motor Co.*
    2006 U.S. Dist. LEXIS 63646 (N.D. Cal Aug 24, 2006) ................................................19

*Stickrath v. Globalstar, Inc.*
    527 F. Supp. 2d 992 (N.D. Cal. (2007) .............................................................................6

*Swingless Golf Club Corp. v. Taylor*
    679 F.Supp.2d 1060 (N.D.Cal.2009)................................................................................11

*Velasco v. Chrysler Grp. LLC*
    2014 WL 4187796 (C.D. Cal.  2014) .................................................................................8

*Vess v. Ciba-Geigy Corp. USA*
    317 F.3d 1097 (9th Cir. 2003) .......................................................................................5, 19

*Washington v. Baenziger*
    673 F.Supp. 1478 (N.D. Cal. 1987).................................................................................5, 7

*Williams v. Steuart Motor Co.*
    494 F.2d 1074 (D.C. Cir. 1974) ......................................................................................20

*Wilson v. Hewlett Packard*
    668 F.3d 1136 (9th Cir. 2012)..........................................................................................12

*Yumul v. Smart Balance, Inc.*
   733 F. Supp. 2d 1117 (C.D. Cal. 2010) .............................................................23

**Statutes**

Cal. Bus. & Prof. § 17200 ...............................................................................3

Cal. Bus. & Prof. Code § 17203 .....................................................................16

Cal. Bus. & Prof. Code § 1750 .........................................................................2

Cal. Bus. & Prof. Code §17500 ....................................................................2, 3

Cal. Civ. Code § 1770(a) ................................................................................13

Cal. Civ. Code § 1770(a)(5) ...........................................................................15

Cal. Civ. Code § 1770(a)(7) ...........................................................................15

Cal. Civ. Code § 1780(a) ................................................................................16

**Rules**

Fed. R. Civ. P. 12 ...............................................................................2, 12, 23

Fed. R. Civ. P. 8(a)(3) ....................................................................................15

Fed. R. Civ. P. 9(b) ...................................................................................passim

1    **I.      INTRODUCTION**

2         It is "a basic rule of California law" that a manufacturer has a duty to disclose any defect

3    that poses a safety risk. *Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 997 (N.D. Cal.

4    2013), citing *Falk v. General Motors Corp.,* 496 F.Supp.2d 1088 (N.D.Cal.2007).  *See also*

5    *Chamberlan v. Ford Motor Co.,* 314 F. Supp. 2d 953, 963 (N.D. Cal. 2004). This duty arises

6    when the defendant has exclusive knowledge of material facts.  *Falk* at 1095.

7         The gravamen of Mr. Duttweiler's claim is:

8         1.      The motorcycles at issue come equipped with defective cast aluminum drop link

9    plates that distort, crack, and fail under ordinary use, in some instances while the motorcycles are

10   quite new. First Amended FAC ("FAC") ¶¶ 18-24, 38-40.

11        2.      When the defective plates fail, they cause locking up of the rear wheel and

12   catastrophic loss of control of the motorcycle, which poses a potentially fatal safety hazard to

13   class members and others on the road. Numerous class members have experienced crashes as a

14   result of this defect. FAC, ¶22-24, 38-40.

15        3.      Triumph had actual knowledge of the defect. FAC ¶¶ 20-25, 36, 82, as is

16   evidenced by:

17             a.      multiple class members reported the occurrence of the defect between

18   2007 and 2014. FAC, ¶¶ 21-24.

19             b.      multiple class members communicated at length with Triumph about the

20   defect, including as early as November 2007, and Triumph sought to inspect the defective parts.

21   FAC, ¶¶ 21-24.

22             c.      Triumph developed a countermeasure and brought to market a re-

23   engineered, milled steel part that corrects the defect for 2009 and subsequent models. FAC ¶ 25.

24   It defies belief that, absent knowledge of the defect, Triumph would voluntarily replace the

25   defective part with one that is both heavier and more expensive. And it likewise stretches

26   credulity that Triumph brought a re-engineered fix to market as little as 18 months after Mr.

27   Duttweiler's purchase of his motorcycle with no knowledge of the defect at the time of purchase.

28   Accordingly, Mr. Duttweiler has pled that Triumph learned of the defects "through consumer

1  FACs at least as early as 2007 and most likely in 2006, given the timing of FACs and the speed

2  with which [Triumph] implemented a redesign for new bikes." FAC, ¶ 27.

3        4.    In any event, claims under the California False Advertising Law ("FAL") and the

4  common law of negligence require only that Triumph ***ought, through reasonable care, to have***

5  ***known of the defect***. Cal. Bus. & Prof. Code §17500 and *Anderson v. Owens-Corning Fiberglas*

6  *Corp.*, 53 Cal.3d 987 (1991); *see also Rosa v. City of Seaside,* 675 F.Supp.2d 1006, 1011

7  (N.D.Cal. 2009). Mr. Duttweiler has pled that Triumph ought to have known that the plates were

8  ill-designed, and that "small or thin cast aluminum plates would not be adequate" for their

9  intended purpose.  FAC, ¶ 20, 82.

10        5.    Triumph had a duty to notify class members of the Suspension Defect both at the

11  time of sale and on a continuing basis thereafter. FAC, ¶ 5, 30, 57-58, 88.  *Falk v. Gen. Motors*

12  *Corp.,* 496 F. Supp. 2d 1088, 1095 (N.D. Cal. 2007).

13        6.    Even if Triumph had learned of the Suspension Defect after the sale of Mr.

14  Duttweiler's motorcycle, it had an ongoing duty to warn the class of the danger, and a duty to

15  recall or retrofit the defective motorcycles as necessary to make them safe. *Roberts v. Electrolux*

16  *Home Products, Inc., No.* 2013 WL 7753579, at *13 (C.D. Cal. 2013); *Lunghi v. Clark*

17  *Equipment Co.,* 153 Cal.App.3d 485, 494 (1984); *Hernandez v. Badger Constr. Equip. Co.,* 28

18  Cal. App. 4th 1791, 1827 (1994).

19        7.    Triumph omitted, failed to notify, and concealed from the class members the

20  existence of the Suspension Defect both prior to their purchases of the motorcycles and on a

21  continuing basis thereafter. FAC, ¶ 27, 44, 57, 60.

22        The FAC satisfies the FRCP 12 and 9(b) pleading standards for a safety defect omissions

23  case.

24  **II.    ISSUES**

25        A.    Whether the fraud-based allegations of the FAC satisfy the pleading requirements

26  of Rule 9(b).

27        B.    Whether Mr. Duttweiler has adequately stated a claim under California's

28  Consumers Legal Remedies Act, Cal. Bus. & Prof. Code §§ 1750, et seq.

1      C.      Whether Mr. Duttweiler has adequately stated claims under the unfair, fraudulent,

2  and unlawful prongs of the Unfair Competition Law, California Business and Professions Code §

3  17200, *et seq.*

4      D.      Whether Mr. Duttweiler has adequately stated a claim under California's False

5  Advertising Law, California Business and Professions Code § 17500, *et seq.*

6      E.      Whether Mr. Duttweiler has adequately stated a claim under the common law of

7  negligence.

8      F.      Whether Mr. Duttweiler has adequately stated a fraudulent concealment claim.

9      G.      Whether Mr. Duttweiler's claims are timely.

10  **III.   FACTS**

11      This case involves Triumph's 2006, 2007, 2008, and certain 2009 Daytona 675 and Street

12  Triple 675 motorcycles. It does not involve post-2009 models of Triumph motorcycles because

13  Triumph corrected the Suspension Defect in its 2009 model newly-manufactured motorcycles,

14  albeit without conducting a recall or notifying the class of the defect. FAC, ¶ 25-27.

15      The Suspension Defect involves defective cast aluminum drop link plates (the "Plates")

16  that warp, crack, fracture, and fail with ordinary use. These Plates are an integral part of the

17  suspension systems. Failure of the Plates causes the motorcycle to collapse onto the rear wheel

18  while the rider is operating the motorcycle. This in turn causes catastrophic locking up of the rear

19  wheel, resulting in loss of control of the motorcycle, and threatening the safety of the

20  motorcycle's operator and others on the road. FAC, ¶ 4.  For the 2009 models, Triumph corrected

21  this defect by switching from cast aluminum to milled steel, which is both stronger and more

22  ductile. FAC, ¶ 25.

23      For Mr. Duttweiler, the Suspension Defect manifested itself while he was traveling at

24  normal highway speeds of 60-65 mph under clear conditions. FAC, ¶ 38. After the crash, a visual

25  inspection revealed that the Plates were fractured and broken into pieces, and that the holes

26  through which the Plates are bolted to the motorcycle had become distended and elongated prior

27  to fracturing. FAC, ¶ 40. Approximately six weeks after the accident, *an engineer retained by*

28  *Triumph* to inspect the vehicle advised Mr. Duttweiler that the Plates "were defective and that the

1  material used – a cast aluminum – was likely too brittle and not sufficiently ductile for the Plates'

2  purpose." FAC, ¶ 42.  Despite this, Triumph has refused to address or acknowledge the defect.

3       Mr. Duttweiler has since communicated with several other class members through

4  motorcycle enthusiast groups and learned that they had nearly identical experiences. Two of the

5  people he has found without any discovery from Triumph at all had accidents dating back to early

6  November 2007 and April 2008. In both cases, the affected motorcycles owners or their

7  representatives, including an authorized Triumph dealer, communicated with Triumph at length

8  about the problem. FAC ¶ 22. Online research has further revealed numerous complaints from

9  other Triumph motorcycle owners who experienced the Suspension Defect as far back as June

10  2007. A selection of these is presented in the FAC. They described crashes, motorcycle damage,

11  and injuries occurring as a result of the Suspension Defect. FAC, ¶ 24.

12  **IV.  PROCEDURAL HISTORY**

13       The Complaint was filed on October 29, 2015. In January 2015, Mr. Duttweiler

14  discovered new evidence about other class members who experienced motorcycle crashes as a

15  result of the Defect and notified Triumph in 2007.  Plaintiff's counsel obtained leave to amend

16  the pleading. [Doc. No. 20]. This new evidence is set forth at paragraphs 22 and 23 of the FAC,

17  along with evidence concerning other class members whom Mr. Duttweiler has since

18  interviewed.

19       On March 13, 2015, Plaintiff filed the FAC. On April 14, 2015, Triumph filed this motion

20  to dismiss along with a motion to stay all discovery.

21  **V.  LEGAL STANDARD**

22       In ruling on a Fed. R. Civ. P. 12(b)(6) motion, the Court must take all allegations of

23  material fact as true and construe them in the light most favorable to the nonmoving party. The

24  FAC need not "contain detailed factual allegations," but must plead "enough facts to state a claim

25  to relief that is plausible on its face." *Cousins v. Lockyer*, 568 F.3d 1063, 1067-8 (9th Cir. 2009).

26  Facial plausibility is satisfied when a plaintiff "pleads factual content that allows the court to

27  draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

28  *Iqbal,* 556 U.S. 662, 663, 129 S. Ct. 1937 (2009).

1    **VI.    ARGUMENT**

2         **A.    Plaintiff's Fraud-Based Allegations Satisfy Federal Rule 9(b)**

3         A pleading is sufficient under Rule 9(b) if it is "specific enough to give defendants notice

4    of the particular misconduct which is alleged to constitute the fraud charged so that they can

5    defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v.*

6    *California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation omitted). The standard is satisfied if the

7    plaintiff alleges "the who, what, where, and how of the misconduct charged." *In re Apple In-App*

8    *Purchase Litig.*, 855 F. Supp. 2d 1030, 1037 (N.D. Cal. 2012), quoting *Vess v. Ciba-Geigy Corp.*

9    *USA*, 317 F.3d 1097, 1105 (9th Cir. 2003).

10        In examining whether a plaintiff satisfies Rule 9(b), "the court must construe the FAC in

11   the light most favorable to the plaintiff." The "FAC should not be dismissed unless it appears

12   beyond all doubt that the plaintiff can prove no set of facts in support of his claim which would

13   entitle him to relief." *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995);

14   *Smith v. Allstate Ins. Co.,* 160 F.Supp. 2d 1150, 1153 (S.D. Cal. 2001).

15        Importantly, the Rule 9(b)   standard is relaxed in fraudulent omission cases, because

16   "[c]learly, a plaintiff in a fraud by omission suit will not be able to specify the time, place, and

17   specific content of an omission as precisely as would a plaintiff in a false representation claim." ,

18   *Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088, 1098-99 (N.D. Cal. 2007) This has been the

19   law in California for at least two decades:

20        Another judge in this district has recognized that a fraud by omission claim can
          succeed without the same level of specificity required by a normal fraud claim.
21        *See, e.g., Washington v. Baenziger*, 673 F.Supp. 1478, 1482 (N.D. Cal. 1987)
          (Weigel, J.) ("Where the fraud consists of omissions on the part of the defendants,
22        the plaintiff may find alternative ways to plead the particular circumstances of the
          fraud. [F]or example, a plaintiff cannot plead either the specific time of the
23        omission or the place, as he is not alleging an act, but a failure to act.") (internal
          citations and quotations omitted); *see also David K. Lindemuth Co. v. Shannon*
24        *Financial Corp.*, 637 F.Supp. 991, 995 (N.D. Cal. 1986) (Weigel, J.).

25   *Falk*, 496 F. Supp. 2d. at 1099.

26   Thus, *Falk* and subsequent cases have held that allegations that a manufacturer of vehicles knew

27   of safety complaints over a period of years and failed to disclose the extent of its knowledge to

28   consumers sufficed to allege a fraud by omission claim with sufficient particularity, even with

1   respect to common law fraud. *Id.* at 1099. "Accordingly Plaintiffs' fraud by omission claim will

2   not be dismissed purely for failure to precisely state the time and place of the fraudulent

3   conduct." *Id.* See, for example, *Stickrath v. Globalstar, Inc.,* 527 F. Supp. 2d 992, 1001 (N.D.

4   Cal. (2007).

5   　　　　*__Mr. Duttweiler has adequately alleged active concealment__*

6   　　　　In a safety defect case, a claim of active concealment is sufficient where it avers that the

7   defendant received consumer complaints but failed to notify its customers of the defect or effect a

8   recall, or took action that created the illusion that the part was not defective (such as refusing to

9   make class members whole, denying the defect, or replacing the broken part with an equally

10  defective part). *See, for example, Johnson v. Harley-Davidson Motor Co. Grp., LLC,* 2011 WL

11  3163303, at *5 (E.D. Cal. July 22, 2011), citing *Falk* ("The plaintiffs in *Falk* alleged active

12  concealment by averring that GM had received numerous customer complaints, yet did not notify

13  other customers or effect a recall"). Notably, in *Harley-Davidson*, the defendant's inadequate

14  response to the complaints of just two plaintiff customers were sufficient to ground causes of

15  action for fraudulent concealment. *Id,* at *5.

16  　　　　Mr. Duttweiler has pled that other named class members notified Triumph of the defect as

17  early as November 2007, and that he did the same thing in April 2014.  FAC, ¶ 22, 42. And he

18  has pled that in response, Triumph denied the defect and refuse to make the complaining

19  customers whole, notify the class members of the defect, or conduct a recall. FAC, ¶¶ 5, 22, 44.

20  　　　　Triumph's cases on this point are factually inapposite.  In *Gray v. Toyota Motor Sales,*

21  *USA,* 2012 WL 313703 (C.D. Cal. 2012), the only allegation was that advertising materials failed

22  to disclose facts about the subject car's fuel-efficiency rating. There was no allegation of active

23  concealment in the face of customer complaints to the defendant.  (Notably, the court followed

24  *Falk* throughout its analysis.)  And in *Herron v. Best Buy,* the Court found that the only allegation

25  at all was a boilerplate, conclusory statement that the Defendant had concealed facts. 924 F.

26  Supp. 2d 1161, 1176 (E.D. Cal. 2013).

27  　　　　*__Duttweiler has adequately identified the omission at issue: it is the Suspension Defect__*

28  　　　　Triumph suggests that the FAC fails to identify "advertisements or representations, or the

1   omissions Plaintiff alleges are at issue."  MPA 8:15-16. Since this is an omissions case, there are

2   no specific advertisements or affirmative representations at issue.   Not one affirmative statement

3   by Triumph in any advertising anywhere ever disclosed the omission.  Mr. Duttweiler has

4   described the omitted and fact and identified occasions when Triumph should have revealed it:

5   "Triumph concealed material facts concerning the Suspension Defect before, during, and after the

6   sale of the Class Motorcycles to Plaintiff and Class Members." FAC, ¶ 87.

7       •    "Specifically, Triumph has failed to disclose the Suspension Defect at the time of

8            purchase or repair." FAC, ¶ 27

9       •    "Triumph violated the Consumers Legal Remedies act by, among other things,

10           failing to disclose at the point of sale or otherwise that the Plates are defective and

11           pose a serious safety hazard." FAC, ¶ 57

12      •    "These [unlawful] practices include failing to disclose at the point of sale or

13           otherwise that the Class Motorcycles have defective Plates." FAC, ¶ 66

14  Mr. Duttweiler has pled precisely what Triumph failed to tell him, and when, particularly given

15  that, "[c]learly, a plaintiff in a fraud by omission suit will not be able to specify the time, place,

16  and specific content of an omission as precisely as would a plaintiff in a false representation

17  claim." *Falk,* citing *Washington v. Baenziger*, 673 F.Supp. 1478, 1482 (N.D. Cal. 1987) and

18  *David K. Lindemuth Co. v. Shannon Financial Corp.*, 637 F.Supp. 991, 995 (N.D. Cal. 1986)

19       *Marolda v. Symantec Court,* 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009) is not on point.

20  There the court required the plaintiff to point to advertising materials because she alleged she was

21  duped into buying a subscription antivirus software service that renewed automatically. The key

22  issue was whether the advertisements plaintiff viewed in making her purchase disclosed the

23  automatic renewal. That is very different from a dangerous product where the danger is never

24  disclosed anywhere.

25       In fact, the courts of this circuit have repeatedly held that *Marolda* does not apply to pure

26  omission cases, including automobile safety defect cases, and that instead, courts should apply

27  "the Ninth Circuit's more flexible requirement" that requires a party to "articulate the who, what,

28  when, where, and how of the misconduct alleged." *Overton v. Bird Brain, Inc.,* No. SACV 11-

1   1054 DOC ANX, 2012 WL 909295, at *6 (C.D. Cal. Mar. 15, 2012); *MacDonald v. Ford Motor*

2   *Co.,* 2014 WL 1340339 (N.D. Cal. 2014) (noting  "as other courts have recognized, the *Marolda*

3   requirements are not necessarily appropriate for all cases alleging a fraudulent omission" and

4   instead applying the *Falk* standard, "because a plaintiff alleging an omission-based fraud will

5   "not be able to specify the time, place, and specific content of an omission as would a plaintiff in

6   a false representation claim."); *Velasco v. Chrysler Grp. LLC,* 2014 WL 4187796, at *4 (C.D.

7   Cal.  2014) (a plaintiff need not point to any advertising or representations in a pure omissions

8   case); *Baggett v. Hewlett-Packard Co.,* 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007) ("Because

9   such a plaintiff is alleging a failure to act instead of an affirmative act, the plaintiff cannot point

10  out the specific moment when the defendant failed to act.")

11      Finally, Mr. Duttweiler has not pled that Triumph engaged in any actionable affirmative

12  misrepresentations.  This case turns on Triumph's omissions about, and active concealment of,

13  the safety defect, not any affirmative representation.  Triumph' s "puffery" argument misses the

14  point.

### 1.      Mr. Duttweiler has adequately alleged reliance

16  Triumph asserts that the FAC fails to alleged reliance.  In fact, Mr. Duttweiler has pled:

17  •       Plaintiff and members of the Class have suffered injury-in-fact by "having paid

18          more than they would have for the Class Motorcycles had Triumph not concealed

19          the Suspension Defects. FAC, ¶ 28.

20  •       "Plaintiff and any objectively reasonable consumer expected that Triumph would

21          notify them of the Suspension Defect. Plaintiff and reasonable consumers further

22          expected that Triumph would not sell them Class Motorcycles with known safety

23          defects such as this Suspension Defect." FAC, ¶ 30.

24  •       "Had Plaintiff and the Class members known of the Suspension Defect, they

25          would not have bought the Class Motorcycles or would have paid a much lower

26          price to purchase them." FAC, ¶ 33.

27  •       "Had Triumph adequately disclosed information about the Suspension Defect,

28          Plaintiff, the members of the CLRA Subclass, and any reasonable consumer

would not have bought a Class Motorcycle, or they would have paid far less for a Motorcycle that is unsafe." FAC, ¶ 59.

As to whether Mr. Duttweiler or the class would have "been aware of" the disclosure had Triumph made it, he has pled repeatedly that Triumph had a duty to make the defect known at the time and point of sale, precisely to facilitate customer awareness:

- "Triumph violated the Consumers Legal Remedies act by, among other things, failing to disclose *at the point of sale* or otherwise, that the Plates are defective and pose a serious safety hazard."  FAC, ¶ 57.
- "These [unlawful] practices include failing to disclose at the point of sale or otherwise that the Class Motorcycles have defective Plates." FAC, ¶ 66
- Triumph concealed material facts concerning the Suspension Defect before, during, and after the sale of the Class Motorcycles to Plaintiff and Class Members. FAC, ¶ 87

Importantly, with respect to the negligence cause of action and therefore to the unfairness prong of the UCL, Triumph had an ongoing duty to disclose the defect *at all times* after the point of sale, thus it is illogical to suggest Mr. Duttweiler must show any particular moment in time when he would have seen the disclosure, had it been made. It is well-established law that a manufacturer or distributor has an ongoing post-purchase duty to warn consumers of dangerous product defects. Restatement (Third) of Torts: Prod. Liab. § 10(a) (1998) ("One engaged in the business of selling or otherwise distributing products is subject to liability for harm to persons or property caused by the seller's failure to provide a warning after the time of sale.") California law further imposes a duty to recall or retrofit a defective product. *Roberts v. Electrolux Home Products, Inc.,* 2013 WL 7753579, at *13 (C.D. Cal. 2013), citing *Lunghi v. Clark Equipment Co.,* 153 Cal.App.3d at 494 (defendant's discovery of the "dangerous propensities" of a machine after it had been on the market imposed a duty to warn or retrofit). *See also Hernandez v. Badger Constr. Equip. Co.,* 28 Cal. App. 4th 1791, 1827 (1994).

More generally, the notion that a plaintiff must demonstrate that he or she would have seen a material disclosure had it been made simply does not make sense in cases of product

1    failure. As Judge Miller of the Southern District recently noted:

2        [Defendant's] reliance argument defies common sense and real-world business
         practice. No refrigerator manufacturer would ever advertise its product to, in
3        essence, consistently fail due to repeated clogging of the ice system, frequent
         problems with the cooling system necessitating control board rebooting, and
4        periods of nonoperation. Such advertising would be tantamount to an automobile
         manufacturer advertising its vehicle routinely stalls in freeway traffic, or a
5        wireless telephone provider advertising a high rate of dropped calls. Such
         disclosures do not exist in the real world because they represent product or service
6        failure.

7        For these reasons, the court concludes Plaintiff has sufficiently alleged knowledge
         and reliance as required to bring CLRA, UCL, and FAL claims. Accordingly,
8        LG's motion to dismiss Plaintiff's fraud-based claims is denied"

9    *Clark v. LG Electronics U.S.A., Inc.,* 2013 WL 5816410, at *6-7 (S.D. Cal. 2013).

10           **2.    Mr. Duttweiler has also adequately alleged reliance by alleging a
                     material omission**

11

12       For claims based on fraudulent omissions under the UCL and CLRA, reliance may be

13   inferred where a fraudulent omission is shown to be material.  *In re Tobacco II Cases*, 46 Cal. 4th

14   298, 327, 207 P.3d 20, 39 (2009). Moreover, "[n]ondisclosures of safety defects are presumed

15   material." *Doyle v. Chrysler Grp. LLC,* No. SACV 13-00620 JVS, 2014 WL 3361770, at *7

16   (C.D. Cal. July 3, 2014), quoting *Falk v. General Motors,* 496 F.Supp.2d at 1096. *See also*

17   *Grodzitsky v. Am. Honda Motor Co.,* 2013 WL 2631326, at *5 (C.D. Cal. June 12, 2013)

18   (denying defendant's motion to dismiss UCL and CLRA claims with respect to defective

19   automobile windows and finding "[b]ecause Plaintiffs have alleged that

20   the omission was material, they have sufficiently pled actual reliance."); *Keegan v. Am. Honda*

21   *Motor Co.,* 284 F.R.D. 504, 530 (C.D. Cal. 2012) *leave to appeal denied*, No. 12-80138, 2012

22   WL 7152289 (9th Cir. Nov. 9, 2012) ("Under the CLRA, causation can be shown as to an entire

23   class by proving materiality.")

24       Because Plaintiff has alleged that the omission was material to the reasonable consumer

25   (and in any event, under *Falk*, safety defects are presumed to be material), he has sufficiently

26   pled reliance. FAC, ¶ 32, 57.

             **3.    Mr. Duttweiler adequately alleged Triumph's knowledge of the defect**

27       As a threshold matter, "[t]he heightened pleading requirement of Rule 9(b) does not apply

28

1   to allegations regarding a defendant's state of mind. Thus, knowledge and intent need only be

2   alleged generally to state a valid claim for fraud. Fed.R.Civ.P. 9(b)." *Kowalsky v. Hewlett-*

3   *Packard Co.,* 2011 WL 3501715, at *2 (N.D. Cal. 2011)(emphasis added), citing *Swingless Golf*

4   *Club Corp. v. Taylor,* 679 F.Supp.2d 1060, 1067 (N.D.Cal.2009). ("Malice, intent, knowledge,

5   and other conditions of a person's mind may be alleged generally."). Triumph's attempt to apply

6   the Rule 9(b) standard to the knowledge allegations in the FAC is therefore ill-founded.

7   Nevertheless, Mr. Duttweiler has pled knowledge with sufficient particularity to satisfy both

8   Rules 12 and 9(b).

9   ### ***Knowledge Under the UCL, CLRA, and Common Law of Fraudulent Concealment***

10   Mr. Duttweiler has pled more than enough to establish a reasonable inference that

11   Triumph was aware of the defect before April 2007, when he purchased his motorcycle. Triumph

12   launched the defective motorcycles in October of 2005. FAC, ¶ 20.  Absent any discovery, Mr.

13   Duttweiler has found evidence that consumers complained of the part failing as early as June

14   2007, less than 2 months after he purchased his motorcycle. FAC, ¶ 24.  All of the defective

15   motorcycles were well within warranty at this time, and class members would have brought

16   warranty claims when the Plates failed. Purely through communications with local motorcycle

17   enthusiasts, Mr. Duttweiler has found and obtained evidence from local class members who

18   suffered crashes as a result of the Suspension Defect and communicated at length with Triumph

19   as early as November 2007. FAC, ¶ 22-24.

20   Finally, within as little as 18 or 20 months of Mr. Duttweiler's purchase, Triumph

21   developed a countermeasure and brought to market a re-engineered, milled steel part that corrects

22   the defect for some 2009 and subsequent models.[1]  FAC ¶ 25. It defies belief that, absent

23   knowledge of the defect, Triumph would voluntarily replace the defective part with one that is

24   both heavier and more expensive. And it likewise defies belief that a countermeasure for the

25   defect was designed and tested and a re-engineered part was brought to market so soon after Mr.

26

27

28   [1] Triumph launches new models several months before the beginning of the named calendar year.

1   Duttweiler's purchase of his motorcycle if Triumph had no knowledge of the defect at the time of

2   Mr. Duttweiler's purchase.  Accordingly, Mr. Duttweiler has pled that Triumph learned of the

3   defects "through consumer complaints at least as early as 2007 and most likely in 2006, given the

4   timing of complaints and the speed with which [Triumph] implemented a redesign for new

5   bikes." FAC, ¶ 27.

6          Rule 12 is satisfied when a plaintiff "pleads factual content that allows the court to draw

7   the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.

8   Iqbal,* 556 U.S. 662, 663, 129 S. Ct. 1937 (2009).  A plaintiff need only establish a "plausible

9   inference" of knowledge. *Elias v. Hewlett-Packard Co.*, 2014 WL 493034, at *7 (N.D. Cal.

10  2014). The facts here, particularly the facts about Triumph's own course of conduct in rapidly

11  fixing the defect on new motorcycles, are more than sufficient to satisfy the Rule 12 standard on

12  the question of knowledge.

13         Triumph's cases suggesting customer complaints are inadequate to establish knowledge

14  are inapposite.  In *Berenblat v. Apple, Inc.* 2009 WL 2591366 (N.D. Cal., 2010), the only

15  evidence Plaintiff offered was the existence of customer complaints on defendant's website.

16  Likewise, in *Wilson v. Hewlett Packard,* 668 F.3d 1136 (9th Cir. 2012)*,* plaintiff's only evidence

17  was a handful of consumer complaints and an entirely conclusory, sparse allegation that the

18  defendant "had access to aggregate information and data" about the risks inherent in the

19  product.  Here, Mr. Duttweiler has found – absent any formal discovery – multiple individuals

20  who suffered crashes due to the Suspension Defect and not only complained to Triumph but

21  described the Suspension Defect and engaged in protracted communications with Triumph about

22  it. Complaint, ¶ 22-23. In fact, in one instance, an authorized Triumph dealer—presumably

23  someone with significant knowledge about these motorcycles—negotiated with Triumph on

24  behalf of a class member to get the Suspension Defect and related damage repaired. Complaint, ¶

25  22. Mr. Duttweiler has also pled that Triumph sought to inspect the defective Plates for these

26  class members. *Id.* These communications coupled with the fact that Triumph promptly brought

27  to market a re-engineered part are more than sufficient, at the pleadings stage, to ground

28  allegations of knowledge.

1

*Knowledge Under the FAL and the Common Law of Negligence*

2   Claims under the FAL and the common law of negligence require only that the defendant

3   either *would have known "by the exercise of reasonable care"* or that the defendant *reasonably*

4   *should have known* of the safety defect that it failed to disclose. Cal. Bus & Prof. Code § 17500.

5   *Anderson v. Owens-Corning Fiberglas Corp.*, 281 Cal.Rptr.528, 538 (1991); *see also Rosa v.*

6   *City of Seaside* 675 F.Supp.2d 1006, 1011 (N.D.Cal. 2009). Mr. Duttweiler has pled that even at

7   the time the class motorcycles were first sold, Triumph knew or should have known, and should

8   have disclosed, that the cast aluminum plates were too small, thin, or brittle for the purpose for

9   which they were intended and were subject to failure. FAC, ¶ 20, 82.

10   Moreover, as set forth above, Triumph had an ongoing duty to warn the class – and a duty

11   to retrofit or recall the defective motorcycles – even had it learned of the Suspension Defect after

12   Mr. Duttweiler purchased his motorcycle.

13   **B.   Mr. Duttweiler has sufficiently stated a claim under the CLRA**

14   The CLRA makes illegal "unfair methods of competition and unfair or deceptive acts or

15   practices undertaken by any person in a transaction intended to result or which results in the sale

16   or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). As with the UCL,

17   conduct that is "likely to mislead a reasonable consumer" violates the CLRA. *Colgan v.*

18   *Leatherman Tool Grp., Inc.,* 135 Cal. App. 4th 663, 680, 38 Cal. Rptr. 3d 36, 46 (2006), *as*

19   *modified on denial of reh'g (Jan. 31, 2006).*

20   The CLRA is to be "liberally construed and applied to promote its underlying purposes,

21   which are to protect consumers against unfair and deceptive business practices." *Keegan v. Am.*

22   *Honda Motor Co.,* 838 F. Supp. 2d 929, 938 (C.D. Cal. 2012).  "The standard under both the

23   CLRA and the 'fraudulent' prong of the UCL is the 'reasonable consumer test', which requires a

24   plaintiff to show that members of the public are likely to be deceived by the business practice."

25   *Dorfman v. Nutramax Labs, Inc.,* 13 cv-873, 2013 WL 5353043, *10 (S.D. Cal. Sept. 23, 2013).

26   The CLRA proscribes not just affirmative misstatements, but also failures to disclose.

27   *McAdams v. Monier, Inc.,* 182 Cal. App. 4th 174, 184-185, 105 Cal. Rptr. 3d 704, 710 (2010) (A

28   manufacturer's failure to disclose a material fact is independently actionable under the CLRA

1  regardless of whether or not the nondisclosure is alleged to have been accompanied by additional

2  affirmative statements.) *See also Outboard Marine Corp. v. Superior Court,* 52 Cal. App. 3d 30,

3  36-37, 124 Cal. Rptr. 852 (Ct. App. 1975) ("[f]raud or deceit may consist of the suppression of a

4  fact by one who is bound to disclose it or who gives information of other facts which are likely to

5  mislead for want of communication of that fact.")

6      Here, Plaintiff has adequately pled failures to disclose that are "likely to mislead the

7  reasonable consumer." FAC, ¶¶ 27(a), 58(c).

8      **C.   Mr. Duttweiler has sufficiently stated claims under the UCL**

9          **1.   Plaintiff alleges that Triumph engaged in unfair business practices**

10     "California appellate courts disagree on how to define an 'unfair' act or practice in the

11  context of a UCL consumer action." *Morgan v. Wallaby Yogurt Co., Inc.,* No. 13-CV-00296-

12  WHO, 2014 WL 1017879, at *11 (N.D. Cal. Mar. 13, 2014) (citing *Davis v. Ford Motor Credit

13  Co.,* 179 Cal. App. 4th 581, 594, 101 Cal. Rptr. 3d 697, 707 (2009)). Three tests are commonly

14  used.

15     The first line of jurisprudence holds that the "unfair" prong requires alleging a practice

16  that "offends an established public policy." The policy must be "tethered to specific

17  constitutional, statutory or regulatory provision." *Bardin v. Daimlerchrysler Corp.*, 136 Cal. App.

18  4th 1255, 1261, 39 Cal. Rptr. 3d 634, 636 (2006) (quotations omitted).

19     A second test applied by courts "weigh[s] the utility of the defendant's conduct against

20  the gravity of the harm to the alleged victim." *Schnall v. Hertz Corp.,* 78 Cal. App. 4th 1144,

21  1167, 93 Cal. Rptr. 2d 439 (2000).

22     Finally, some courts have held that "(1) the consumer injury must be substantial; (2) the

23  injury must not be outweighed by any countervailing benefits to consumers or competition; and

24  (3) it must be an injury that consumers themselves could not reasonably have avoided." *Camacho

25  v. Auto. Club of S. California,* 142 Cal. App. 4th 1394, 1403, 48 Cal. Rptr. 3d 770, 777 (2006)

26  (citing *Orkin Exterminating Co. v. F.T.C.*, 849 F.2d 1354, 1364 (11th Cir. 1988)).

27     The FAC adequately alleges that Triumph has breached the UCL on any of these three

28  tests:

1    1.    The conduct alleged in the FAC violates the CLRA, satisfying the requirement

2  that a UCL unfairness claim be tethered to a specific statutory violation.

3    2.    The harm of the misconduct alleged in the FAC greatly outweighs any utility.  The

4  Suspension Defect poses a serious, potentially life-threatening, risk to both the class and the

5  members of the public who share the road with them.

6    3.    The injury to Plaintiff and the class is substantial, both in terms of the monetary

7  costs of the Suspension Defect and the personal risks it creates. It offers no benefits to

8  consumers. The only conceivable benefit to Triumph is monetary. Lastly, because the Suspension

9  Defect is not discoverable until it manifests, Plaintiff and the class could not reasonably have

10  avoided their injury.   And importantly, as described above, under the unfairness prong of the

11  UCL, Triumph's duty to disclose the defect was ongoing after Mr. Duttweiler and other class

12  members purchased the defective motorcycles.

13    **2.    Plaintiff alleges that Triumph engaged in unlawful business practices**

14    Plaintiff has alleged that Triumph violated sections 1770(a)(5) and (a)(7) of the CLRA.

15    **3.    Plaintiff alleges that Triumph engaged in fraudulent business
          practices**

16

17    A plaintiff states a claim under the fraud prong of the UCL if he or she alleges that the

   defendant's conduct was likely to mislead a reasonable consumer.  *In re Tobacco II Cases*, 46

18  Cal. 4th 298, 327, 207 P.3d 20, 39 (2009). Plaintiff has alleged: "Triumph's concealment of the

19  Suspension Defect was likely to deceive reasonable consumers." FAC, ¶ 58(c). The named

20  Plaintiff must also allege reliance to have standing. Plaintiff has alleged reliance through a

21  showing of materiality, as pled at FAC, ¶¶ 32, 47(d) and 57, and as discussed in detail above.

22

23    **4.    Mr. Duttweiler can properly claim both UCL equitable relief and
          damages**

24    Federal Rule of Civil Procedure 8(a)(3) provides:  A demand for relief "may include relief

25  in the alternative."  Ignoring Rule 8(a)(3) and decades of Ninth Circuit jurisprudence, Triumph

26  argues that a plaintiff cannot seek both damages and equitable relief under the California

27  consumer protection statutes which explicitly contemplate precisely that.  In short, Triumph

28  claims that if Plaintiff seeks CLRA damages, then those damages are by definition adequate legal

1    remedies, even if the Plaintiff does not ultimately recover them, and he cannot receive *any*

2    equitable remedies, including restitution or an injunction, under either the CLRA or UCL.   This

3    fails for two reasons.

4           The first is simple common sense.  If the rule were as Triumph contends, then no court

5    could ever allow a claim for CLRA damages to be brought in tandem with a UCL claim which

6    allows for *only* equitable remedies, or a CLRA claim with a request for an injunction.  See *In re*

7    *Tobacco II Cases*, 46 Cal. 4th at 312.  But the Ninth Circuit has repeatedly permitted UCL and

8    CLRA claims to proceed in tandem in case after case.  *See, e.g.*, *Hinojos v. Kohl's Corp.*, 718

9    F.3d 1098, 1103 (9th Cir. 2013); *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1234 (9th Cir. 2013).

10   And by its express language, the CLRA permits a plaintiff to seek damages and injunctive relief,

11   along with other forms of damage according to proof.  Cal. Civ. Code § 1780(a); *see In re Sony*

12   *Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F.Supp.2d 942, 971 (S.D. Cal.

13   2012).   Thus, it cannot be true that merely pleading CLRA damages bars any equitable remedy

14   under the UCL or CLRA, particularly at the pleading stage.

15          Second, the purported "adequate remedy at law"—the compensatory damages sought

16   under the CLRA claim—would not protect unsuspecting ordinary consumers *or the Plaintiff*

17   *himself* in this case, from future harm as long as these unsafe motorcycles remain on the road.

18   Such protection is why both the UCL and CLRA include injunctive relief as a remedy.  *See* Cal.

19   Bus. & Prof. Code § 17203; Cal. Civ. Code § 1780.   The UCL focuses on "the defendant's

20   conduct, rather than the plaintiff's damages, in service of the statute's larger purpose of

21   protecting the general public against unscrupulous business practices."  *In re Tobacco II Cases*,

22   46 Cal. 4th at 312.  The UCL's permitted remedies line up with its purposes: A plaintiff may

23   obtain both restitution and/or injunctive relief against unfair practices for the dual purposes of

24   protecting the general public and restoring to the parties in interest the money or property that

25   was taken by means of unfair competition.  *See id.* at 313; Cal. Bus. & Prof. Code § 17203.

26   Likewise, the CLRA specifically allows a plaintiff to recover "any" of a list of remedies,

27   including both compensatory damages and an order enjoining the defendant from continuing the

28   wrongful conduct.  Cal. Civ. Code § 1780.  These statutes protect not just the already-injured

1  plaintiffs (through compensatory damages under the CLRA or equitable restitution under the

2  UCL) but also protect ordinary consumers from being harmed in the future by "stopping the

3  offending practice in its tracks." *In re Tobacco II Cases,* 46 Cal.4th 298, 320 (2009), emphasis

4  added.    The same logic applies to FAL claims.

5        **D.**    **Mr. Duttweiler sufficiently pleads an omissions-based FAL claim**

6        Plaintiff's false advertising claim is based on the omission of the Suspension Defect.

7  Triumph cites case law that exclusively concerns *affirmative* misrepresentations, and additionally

8  claims that Plaintiff fails to allege an economic injury caused by such affirmative representations.

9  But this has Plaintiff's claim backwards. Omissions can form the basis of claims under California

10  consumer protection statutes including the FAL.  The economic injury from such omissions

11  includes the additional cost the consumer paid over and above what would have been paid had

12  the omitted fact been disclosed.  *See In re Sony Gaming Networks & Customer Data Sec. Breach*

13  *Litig.*, 996 F.Supp.2d 942, 987-988 (S.D. Cal. 2014).

14        As the *Sony* court explained, California Supreme Court precedent established that

15  "economic injury may result from unfair competition if a plaintiff: " '(1) surrender[s] in a

16  transaction more, or acquire[s] in a transaction less[] than he or she otherwise would have; (2)

17  [has] a present or future property interest diminished; (3) [is] deprived of money or property to

18  which he or she has a cognizable claim; or (4) [is] required to enter into a transaction, costing

19  money or property, that would otherwise have been unnecessary.' " *Id.*, *quoting Kwikset v.*

20  *Superior Court*, 51 Cal.4th 310, 323, 120 Cal.Rptr.3d 741, 246 P.3d 877 (2011).  Where

21  consumers pay more for a product than they otherwise would have if the product had been

22  accurately described, the consumer has lost money or property.  *Id., citing Kwikset* at p. 329.

23  "This reasoning holds true whether the plaintiff's claim is based on affirmative misrepresentations

24  or omissions."  *Id., citing Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal.App.4th 824, 835,

25  51 Cal.Rptr.3d 118 (Cal. Ct. App. 2006) (holding omissions actionable under the CLRA if the

26  omission is "contrary to a representation actually made. . . [or] a fact the defendant was obliged to

27  disclose").

28        As a result, because the plaintiffs alleged that Sony omitted material information

1  regarding the security of Sony Online Services, and that this information should have been

2  disclosed to consumers at the time consumers purchased their Consoles, the Court found a

3  sufficient loss of money or property as a result of Sony's alleged unfair business practices.  It

4  denied the motion to dismiss the plaintiffs' UCL, CLRA *and FAL* claims.  (*Id.* at p. 988.)

5       The result should be no different here.  Triumph failed to disclose the Suspension Defect.

6  (See FAC at ¶¶, 27, 30, 57, 57, 82, 88.)  Plaintiff and the class would have paid less had the

7  Suspension Defect been disclosed.  The motion to dismiss the FAL claim should be denied.

8       **E.       Mr. Duttweiler has sufficiently stated a negligence claim**

9       Triumph next argues that Plaintiff's negligence claim fails because "[a]s explained in

10  Section A, the factual allegations … fail to establish any duty owed by TMA, or a breach of that

11  duty."  (Motion, at p. 14.)  Section A concerns Plaintiff's *fraud* claim.  There, Triumph argues

12  that even the negligence claim "has a fraud underpinning" because it references active

13  concealment and malicious actions, and then incorporates prior paragraphs on fraud; accordingly,

14  it must satisfy the pleading standards for fraud. (Motion, at p. 6.)  So it is entirely unclear what

15  the basis for the motion actually is – failure to plead negligence with specificity, failure to plead

16  the existence of a duty, or some combination of the two.

17       But it matters little because both attacks fail.  First, as set forth in prior sections, Plaintiff

18  has met the specific pleading standard.  Regardless, however pled and even if it overlaps a fraud

19  claim, a negligence claim does not require pleading with factual specificity.  Second, an entity in

20  the distribution chain of a good that is made dangerous by a defect owes a duty of care to the

21  purchaser. The negligence claim is well-pled and the motion should be denied.

22                **1.       Plaintiff's negligence claim, which meets the heightened pleading
                            standard for fraud, does not need to do so**

23

24       Plaintiff has already demonstrated that the FAC meets the heightened pleading standard

25  for fraud, which moots Triumph's argument that the negligence claim fails for the same reasons.

26  But even were this not so, a negligence claim does not require specific pleading and Triumph

27  offers no case supporting any contrary rule.  Indeed, in the sole case Triumph cites for this

28  proposition, *the Plaintiff did not plead a negligence cause of action.  See Snyder v. Ford Motor*

1   *Co.,* No. 06-497, 2006 U.S. Dist. LEXIS 63646, at *8. (N.D. Cal Aug 24, 2006) (emphasis

2   added) Rather, in addition to the fraud claims, the plaintiff brought unjust enrichment, UCL and

3   CLRA claims.  There was no separate allegation that the course of the defendant's conduct might

4   not have been fraudulent, merely negligent.

5        Indeed, where a plaintiff alleges some fraudulent and some non-fraudulent conduct, "only

6   the allegations of fraud are subject to Rule 9(b)'s heightened pleading requirements … The rule

7   does not require that allegations supporting a claim be stated with particularity when those

8   allegations describe non-fraudulent conduct."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097,

9   1104 (9th Cir. 2003).  Thus, "where averments of fraud are made in a claim in which fraud is not

10   an element, an inadequate averment of fraud does not mean that no claim has been stated. The

11   proper route is to disregard averments of fraud not meeting Rule 9(b)'s standard and then ask

12   whether a claim has been stated." *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.,* 238 F.3d 363,

13   368 (5th Cir. 2001) (emphasis added). In such cases, the only consequence of a Rule 9(b)

14   violation would be to strip the fraud allegations, claims of "innocent or negligent

15   misrepresentation … would survive."  *Carlon v. Thaman (In re NationsMart Corp. Sec. Litig.)*,

16   130 F.3d 309, 315 (8th Cir. 1997) (emphasis added).  This is consistent with the purpose of Rule

17   9(b), which is to protect a Triumph from harm to its reputation.  (*Vess, supra* at p. 1104.)

18        Applying a fraud standard makes sense when that same course of conduct is also the basis

19   for a CLRA or UCL claim because – as one example – the UCL includes "deceptive" practices

20   among those it intends to ban.  But negligence is an entirely different animal because it is a tort

21   specifically designed for situations where fraudulent conduct need not be proven.  Thus, even

22   non-specific allegations that could be fraudulent if specifically pled and proven might, without

23   that same pleading and proof, still meet the lowered threshold of a negligence claim.  And

24   pleading negligence does not threaten a Triumph with the same reputational harm that a fraud

25   pleading does.

26        Nor would excising the fraud-related allegations compel dismissal of the negligence cause

27   of action.  True, the FAC does reference "concealment" in the negligence claims.  *See, e.g.*, ¶¶

28   87, 89, 90.  But even stripping those allegations from the FAC still leaves a complete negligence

1  cause of action:  an existing duty to disclose (¶ 88) related to a material fact (¶89) and a breach of

2  that duty through failure to disclose/warn (independent of any fraud) which caused damages

3  (¶91).  Dismissal of this well-stated negligence claim would be improper.

### 2.   Triumph owes a duty of care to Plaintiff

5       To the extent Triumph takes the position that it has no duty of care, it is simply wrong.

6  Triumph offers no legal support for the argument, instead referring back to its discussion of fraud

7  – a discussion having nothing to do with a negligence-based duty of care.

8       In fact, the law is directly opposite to Triumph's position.  *See Williams v. Steuart Motor*

9  *Co.,* 494 F.2d 1074, 1077 (D.C. Cir. 1974) (recognizing duty of dealer to "exercise reasonable

10  care in making the pre-delivery inspection and servicing of the car"); *see also Mui Ho v. Toyota*

11  *Motor Corp.*, 931 F. Supp. 987, 997 (N.D. Cal. 2013) (manufacturer has duty to disclose defect

12  posing safety risk).  Common law negligence imposes a duty upon Triumph to warn of dangers

13  about which it knew or reasonably should have known. See *Anderson v. Owens-Corning*

14  *Fiberglas Corp.*, 53 Cal.3d 987, 1002, 281 Cal.Rptr.528, 538, 810 P.2d 549 (1991); *Rosa v. City*

15  *of Seaside* 675 F.Supp.2d 1006, 1011 (N.D.Cal. 2009).  As one district court expressed the rule:

16  "Where a seller of an article which is not inherently dangerous, but which is rendered dangerous

17  by a defect therein, has knowledge of such defect and of the danger and fails to inform the

18  purchaser of such defect, or represents the article to be safe and sound, the seller is liable for an

19  injury to such purchaser or third persons as a result of such defect."  *Johnson v. Ernest G.*

20  *Beaudry Motor Co.*, 170 F.Supp.164, 169 (D. Ga. 1958) (seller of automobile liable to purchaser

21  for injuries from defective tire). A seller is deemed to have such knowledge if the defect could

22  have been discovered with exercise of ordinary care.  *Id.*

23       There is no genuine dispute that Triumph – the United States "sales, marketing and

24  distribution subsidiary" of its parent company, and thus part of the distribution chain by which

25  these motorcycles come to market (FAC, ¶ 8) – owes a duty to purchasers to exercise ordinary

26  care.  The FAC properly alleges the existence and breach of that duty by Triumph by, among

27  other things, failing to disclose the Suspension Defect and causing Plaintiff's damages.  (FAC ¶

28  91.) Triumph's unsupported argument for the contrary rule should be rejected.

**F.      Mr. Duttweiler has sufficiently stated a claim of fraudulent concealment**

Plaintiff's arguments on active concealment are set forth above, in section A. Briefly, Mr. Duttweiler has pled:

1) that Triumph concealed a material fact (FAC, ¶ 27, 28, 36, 58, 92-98);

2) that Triumph owed a duty to disclose the fact (FAC, ¶ 30, 58, 94) arising from the fact that the safety defect was material and was in Triumph's exclusive or vastly superior knowledge (*Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 997 (N.D. Cal. 2013), citing *Falk v. General Motors Corp.,* 496 F.Supp.2d 1088 (N.D.Cal.2007), *Chamberlan v. Ford Motor Co.,* 314 F. Supp. 2d 953, 963 (N.D. Cal. 2004));

3) that the concealment was intentional ; FAC, ¶ 98

4) that neither he nor any reasonable consumer would have bought the motorcycles at the price they paid had they known of the defect; FAC, ¶ 28, 33, and

5) That plaintiff and the class sustained damage as a direct result of the concealment. FAC ¶¶ 68, 72(c), 73, 78, 84, 97.

**G.      Mr. Duttweiler's claims are timely**

The California Supreme Court has held, "under the delayed discovery rule, a cause of action accrues and the limitations period begins to run when the plaintiff has reason to suspect an injury and some wrongful cause, unless the plaintiff pleads and proves that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action." *Fox v. Ethicon Endo-Surgery, Inc.,* 35 Cal. 4th 797, 803, 110 P.3d 914, 917 (2005) (rejecting rule set forth in *Bristol-Myers Squibb v. Superior Court,* 32 Cal.App.4th 959 (1995) that required pleading all potential causes of action even if factual basis for only one cause of action existed.)

Triumph argues that Mr. Duttweiler's pleading is deficient because he fails to plead the time and manner of discovery of the defect and fails to specifically allege why he was unable to make the discovery despite reasonable diligence. MPA: 17:1-10.

Here, the nature of the Suspension Defect is such that, by definition, a reasonable consumer would not be able to ascertain it, nor would a reasonable consumer have any basis to

1  suspect its existence. In fact, it is difficult to imagine what steps the ordinary user of a motorcycle

2  could reasonably take to ascertain that key structural components are dangerously defective,

3  particularly where the defect is metallurgical in nature. Undertake destructive materials testing on

4  the different components of the motorcycle?

5    Accordingly, Plaintiff has pled: "since the Suspension Defect cannot be detected until it

6  manifests, Plaintiff and the Class members were not reasonably able to discover the problem until

7  long after purchasing their Class Motorcycles, despite their exercise of due diligence." FAC, ¶

8  35. He has alleged what common sense would tell anyone who has had any experience with a

9  motor vehicle: "Plaintiff and reasonable consumers…expected that Triumph would not sell them

10 Class Motorcycles with known safety defects such as this Suspension Defect" and "Plaintiff and

11 any objectively reasonable consumer expected that Triumph would notify them of the Suspension

12 Defect." FAC, ¶ 30.

13   As to the "who, what, and where" of the fraud and its detection, Plaintiff has pled the

14 precise time and manner of his latent discovery of the defect: it occurred on February 1, 2014,

15 while he was traveling on the highway under clear conditions at ordinary highway speeds when

16 the Suspension Defect manifested, causing the rear of his motorcycle to collapsed onto the back

17 tire, which in turn caused the motorcycle to seize and become uncontrollable. FAC, ¶ 38. After

18 the accident, a visual inspection of the motorcycle indicated that the Plates had fractured and

19 broken into pieces, and the holes through which the Plates are bolted to the motorcycle had

20 become distended and elongated prior to fracturing. FAC, ¶ 40. Approximately six weeks later,

21 during an inspection of the motorcycle, an engineer retained by Triumph advised Mr. Duttweiler

22 that the Plates were defective and that the material used – a cast aluminum was likely too brittle

23 and not sufficiently ductile for the Plates' purpose. FAC, ¶ 42. Later, online research and

24 discussions with other motorcycle enthusiasts revealed that other Triumph motorcycle owners

25 had experienced the same defect and had notified Triumph.  FAC ¶ 24.

26   With these allegations, Plaintiff has adequately pled lack of knowledge or means of

27 obtaining knowledge, and the time and manner in which he later came to know of the defect, thus

28 satisfying the delayed discovery rule. *Yumul v. Smart Balance, Inc.,* 733 F. Supp. 2d 1117, 1130

1    (C.D. Cal. 2010).

2    **VII.    CONCLUSION**

3           Triumph sold motorcycles with defective parts. When those defective parts fail, they

4    create a serious safety hazard. Plaintiff and the class are entitled to be made whole.

5           Plaintiff has satisfied Rule 12(b)(6), pleading "enough facts to state a claim to relief that

6    is plausible on its face." *Cousins v. Lockyer,* 568 F.3d 1063, 1067 (9th Cir. 2009). He has

7    likewise satisfied the Rule 9(b) pleading standard for a fraudulent omissions or concealment case.

8    His FAC should not be dismissed unless "it appears beyond all doubt that the plaintiff can prove

9    no set of facts in support of his claim which would entitle him to relief." *Parks School of*

10   *Business v. Sympington,* 51F.3d 1480, 1484 (9th Cir. 1997); *Smith v. Allstate Ins. Co.,* 160 F.

11   Supp. 2d 1150, 1153 (S.D. Cal. 2001).

12   Dated: April 28, 2015              By:        _____*/s/ Michael F. Ram*_____
                                                   Michael F. Ram (SBN 104805)
13                                                 Email: mram@rocklawcal.com
                                                   Susan S. Brown (SBN 287986)
14                                                 sbrown@rocklawcal.com
                                                   RAM, OLSON, CEREGHINO & KOPCZYNSKI
15                                                 555 Montgomery Street, Suite 820
                                                   San Francisco, CA 94111
16                                                 Telephone: 415-433-4949
                                                   Facsimile: 415-433-7311
17
                                                   Richard Alexander (SBN 48432)
18                                                 Annie Wu (SBN 234582)
                                                   Email: info@alexanderlaw.com
19                                                 ALEXANDER LAW GROUP
                                                   111 W. Saint John Street, Suite 700
20                                                 San Jose, CA 95113
                                                   Telephone: 408-289-1776
21                                                 Facsimile: 408-287-1776

22                                                 *Attorneys for Plaintiffs and the Proposed Class*

23
     N:\Docs\1387-01 Triumph\Pleadings\Opp-MTD FAC 4-28-15-FINAL.docx
24

25

26

27

28