UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRAIG R. DUTTWEILER,<br><br>   Plaintiff,<br><br>   v.<br><br>TRIUMPH MOTORCYCLES (AMERICA) LTD.,<br><br>   Defendant. | Case No. 14-cv-04809-HSG<br><br>**ORDER GRANTING IN PART AND DENYING MOTION TO DISMISS; DENYING MOTION TO STAY**<br><br>Re: Dkt. No. 28, 33 |

In this action, Plaintiff Craig Duttweiler asserts violations of California's Unfair Competition Law ("UCL"), California's Legal Remedies Act ("CLRA"), and False Advertising Law ("FAL"), as well as common law negligence and fraudulent concealment causes of action, against Defendant Triumph Motorcycles (America) Ltd. ("Triumph"). Triumph moves to dismiss each of Plaintiff's causes of action for failure to state a claim upon which relief can be granted. Dkt. No. 28 ("Mot.").

The Court has carefully considered the arguments offered by the parties, both in their written submissions and during oral argument before the Court on June 18, 2015. For the reasons set forth below, the motion to dismiss will be **GRANTED IN PART AND DENIED IN PART**.[1]

**I.   BACKGROUND**

Duttweiler brings this action individually and on behalf of similarly situated current or former owners of 2006-2009 Triumph Daytona 675 or Triumph Street Triple 675 motorcycles who paid for repairs or whose motorcycles were damaged as a result of an alleged suspension defect. *See* First Amended Complaint ("FAC") ¶ 45. Duttweiler alleges that these motorcycles were sold with defective cast aluminum drop linkage plates (a part of the motorcycles' suspension

---

[1] Triumph's Motion to Stay Discovery pending the Court's resolution of its Motion to Dismiss, *see* Dkt. No. 33, is **DENIED** as moot.

system) that warp, crack, fracture, and fail with ordinary use (the "suspension defect"), *id*. ¶ 19, and that Triumph knew of the suspension defect and failed to inform consumers, *id*. ¶ 21. Duttweiler further alleges that when the defective drop linkage plates break, they cause "catastrophic locking up of the rear wheel" and "loss of control of the motorcycles, threatening the safety of the motorcycle's rider and others." *Id*. ¶ 4.

Duttweiler purchased a new Triumph Daytona 675 motorcycle on or around April 28, 2007. *Id*. ¶ 37. On February 1, 2014, after riding the motorcycle for approximately 17,400 miles, Duttweiler hit a bump on the highway while traveling at 60-65 miles per hour. *Id*. ¶ 38. The rider behind Duttweiler saw the rear of Duttweiler's motorcycle collapse onto the back tire, causing the rear wheel to seize and Duttweiler to fishtail and skid out of control. *Id*. ¶ 39. Later inspection of the motorcycle revealed that the drop linkage plates had fractured and broken into pieces, and that the holes through which the plates were bolted to the motorcycle had become distended and elongated prior to fracturing. *Id*. ¶ 40. Duttweiler contacted Triumph to report the accident shortly after it occurred and, on April 16, 2014, met with a Triumph representative and an engineer retained by Triumph to inspect the motorcycle. *Id*. ¶ 41-42. During the course of that inspection, the engineer told Duttweiler that the drop linkage plates were defective and that the cast aluminum material from which they were constructed was likely too brittle and not ductile enough for their purpose. *Id*. ¶ 43.

Duttweiler alleges that several other consumers also reported the suspension defect to Triumph. In November of 2007, Matthew Marquis crashed while riding his 2006 or 2007 Daytona. *Id*. ¶ 22. A visual inspection of the motorcycle revealed that the drop linkage plates had fractured. *Id*. Marquis called Triumph to request a repair and discussed the defect with Triumph representatives. *Id*. In April of 2008, Chuck Sorenson was thrown from a 2007 or 2008 Daytona 675 when the drop linkage plates fractured. *Id*. Triumph was notified of the event and discussed the suspension defect with the motorcycle's owner in mid-2008. *Id*. On August 4, 2008, Triumph asked for the drop linkage plates from that motorcycle to be removed and sent to Triumph for inspection, but refused to repair the damage. *Id*. No later than October 2008, Ian Duff experienced a similar suspension defect, which he reported to Triumph on several occasions to

2

request a repair. *Id*. ¶ 23.

Duttweiler further alleges that, between 2007 and 2014, numerous consumers published online accounts of crashes, motorcycle damage, and injuries as a result of the suspension defect. *Id*. ¶ 24. For example, Duttweiler alleges that on June 16, 2007, an owner reported that "[t]he drop link plate (the two triangle shaped plates) broke on the rear suspension. The plates look to [sic] thin. The mounting of the plate is also weak on the inside . . . [.] I'm sure when they lab tested this plate they had the plates bolted better than it is on the bike. The rear upper corner of the plate is what ripped apart." *Id*. The next day, another owner posted "I broke my bike in the same exact spot [the Plates]. I hit the grand canyon of potholes and when I came out the other side I was basically sitting on the rear tire. It set the battery box on my back tire, but I was able to pull off the road without wrecking." *Id*.

Duttweiler alleges that Triumph corrected the suspension defect sometime in 2009, when it switched from the defective cast aluminum drop linkage plates to plates constructed from milled steel. *Id*. ¶ 25. Finally, Duttweiler claims that Triumph has never notified its customers about the suspension defect, did not conduct a recall, offer any form of repair or replacement at its expense, and has actively concealed the existence and nature of the suspension defect from the putative class. *Id*. ¶¶ 26-27.

## II.  LEGAL STANDARD

A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it does not contain sufficient facts to state a plausible claim on its face. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 557). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations and parentheticals omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may also challenge a complaint's compliance with Federal Rule of Civil Procedure 9(b) where fraud is an essential element of a claim. *See Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). Rule 9(b) provides a heightened pleading standard for such claims: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). These circumstances include the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (quotation omitted); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."). "Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns*, 567 F.3d at 1124.

In considering a motion to dismiss, a court must accept the plaintiff's factual allegations as true and construe them in the light most favorable to the plaintiff. *See Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 550 (9th Cir. 1989). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal,* 556 U.S. at 678. If the Court dismisses the complaint, it will generally grant leave to amend "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citation omitted). When a party repeatedly fails to cure deficiencies, however, the court may order dismissal without leave to amend. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992).

### III. DISCUSSION

Triumph moves to dismiss Duttweiler's claims on several grounds. The Court will address

4

each in turn.

### A. Failure to Plead Fraud with Particularity

Triumph argues that Duttweiler's claims cannot survive its motion to dismiss because the FAC fails to plead numerous elements of the alleged fraud with the particularity required by Federal Rule of Civil Procedure 9(b). Specifically, Triumph asserts that Duttweiler has not sufficiently pled: (1) the content of Triumph's misrepresentation or omission, (2) reliance, (3) active concealment of the suspension defect, or (4) Triumph's pre-purchase knowledge of the suspension defect. Mot. at 5-12. The Court considers the first two challenges (*i.e.*, content and reliance) under the Rule 9(b) rubric, below. The third and fourth issues raised by Triumph (*i.e.*, active concealment and pre-purchase knowledge) will be addressed in Section III.B., *infra*.

#### 1. Identification of the Representation or Omission

Triumph moves to dismiss on the ground that Duttweiler has "inadequately [identified Triumph's] advertisements or representations, or the omissions Plaintiff alleges are at issue." Mot. at 8-9. Triumph relies on *Marolda v. Symantec Corp.,* 672 F. Supp. 2d 992 (N.D. Cal. 2009) for the proposition that plaintiffs alleging an omission must "describe the 'content of the omission and where the omitted information should or could have been revealed, [and to] provide representative samples of advertisements, offers or other representations that plaintiff relied on to make her [sic] purchase and that failed to include the allegedly omitted information.'" Mot. at 8 (citing *Marolda*, 672 F. Supp. 2d at 1002). In *Marolda*, the dispute concerned an alleged omission from a particular advertisement. Accordingly, the Court held that—because the content of the allegedly incomplete advertisement was within the plaintiff's knowledge—the plaintiff was required to describe the representation in detail to survive the defendant's motion to dismiss. *See Marolda*, 672 F. Supp. 2d at 1001.

However, "[a]s other courts have recognized, the *Marolda* requirements are not necessarily appropriate for all cases alleging a fraudulent omission." *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1096 (N.D. Cal. 2014) (quoting *Overton v. Bird Brain, Inc.,* No. 11-cv-1054-DOC, 2012 WL 909295, at *6 (C.D. Cal. Mar. 15, 2012)). In some circumstances, claims based on an omission "can succeed without the same level of specificity required by a normal fraud claim."

5

*Cooper v. Pickett,* 137 F.3d 616, 627 (9th Cir. 1997). This is because, when a plaintiff alleges an omission-based fraud, he or she will "not be able to specify the time, place, and specific content of an omission as would a plaintiff in a false representation claim." *Baggett v. Hewlett–Packard Co.,* 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007).

This is just such a case. As the Court found in *MacDonald*, the factual allegations required by the Court in *Marolda* cannot fairly be required of a plaintiff when the alleged omission does not arise from a particular advertisement or representation. Despite the FAC's off-handed reference to Triumph's advertising catchphrases, FAC ¶ 16, it is clear that Duttweiler does not allege that Triumph's obligation to disclose the suspension defect was triggered by the content of any particular advertisement. Instead, Duttweiler's asserts that California law imposed a duty to disclose the suspension defect—regardless of whether Triumph advertised at all—because it posed a serious safety risk to consumers. *See* Dkt. No. 39 ("Opp.") at 1. In short, and unlike in *Marolda*, there is no representation for Duttweiler to describe with the particularity required by Federal Rule of Civil Procedure 9(b). *See MacDonald*, 37 F. Supp. 3d at 1096 (because plaintiffs "[are] alleging a failure to act instead of an affirmative act, the [Plaintiffs] cannot point out the specific moment when the Defendant failed to act.") (quoting *Baggett*, 582 F. Supp. 2d at 1267).

Accordingly, the Court finds that Duttweiler has adequately alleged the "who, what, when and how" given the inherent limitations of an omission claim. The "who" is Triumph, the "what" is knowledge of the suspension defect, the "when" is prior to the sale of Duttweiler's motorcycle, and the "how" is through the various channels of information through which Triumph sold its motorcycles. *See MacDonald*, 37 F. Supp. 3d at 1096 (finding an alleged omission sufficiently pled under substantively identical circumstances). Duttweiler cannot reasonably be expected to plead more in this circumstance.

**2. Reliance**

Triumph next argues that Duttweiler has not adequately pled reliance because he has not alleged that, had the omitted information been disclosed, he would have been aware of the disclosure and behaved differently. Mot. at 10 (citing *Jekowsky v. BMW of N. Am., LLC*, No. 13-cv-02158-JSW, 2013 WL 6577293, at *5 (N.D. Cal. Dec. 13, 2013)); *see also Mirkin v.*

*Wasserman*, 5 Cal. 4th 1082, 1093 (1993). The Court disagrees.

First, the FAC alleges that the putative class "paid more than they would have for the Class Motorcycles had Triumph not concealed the Suspension Defects," FAC ¶ 28, that "Plaintiff and any objectively reasonable consumer expected that Triumph would notify them of the Suspension Defect," *id*. ¶ 30, and that, "[h]ad Triumph adequately disclosed information about the Suspension Defect, Plaintiff, the members of the CLRA Subclass, and any reasonable consumer would not have bought a Class Motorcycle, or they would have paid far less for a Motorcycle that is unsafe," *id*. ¶ 59. Similar allegations of reliance have been found sufficient to survive a motion to dismiss in other vehicle-defect cases. *See Mui Ho v. Toyota Motor Corp*., 931 F. Supp. 2d 987, 999 (N. D. Cal. 2013) (finding reliance allegations sufficient under the CLRA where "Plaintiffs allege that they would not have purchased the Class Vehicles had they known of the headlamp issue"); *Falk*, 496 F. Supp. 2d at 1099 (finding reliance adequately pled where plaintiffs alleged "a 'reasonable customer' would not have paid the asking price had it been disclosed that the speedometer was defective . . . [and where the] same customer may have justifiably relied on GM's failure to disclose defects in the speedometer").[2]

Second, Triumph also takes issue with Duttweiler's alleged failure to plead that he would have been aware of the omitted information had it been disclosed. Mot. at 10. But Duttweiler has done so. The FAC alleges that Triumph had a duty to volunteer information about the suspension defect to each putative class member *at the time of sale*. *See* FAC ¶ 57 (Triumph failed "to disclose at the point of sale or otherwise, that the Plates are defective and pose a serious safety hazard"). No authority cited by Triumph requires a plaintiff to allege more to demonstrate that he or she would have been aware of the disclosure had it been made.

\*   \*   \*   \*

For these reasons, the Court finds that Duttweiler has pled fraud with sufficient specificity under Rule 9(b). Triumph's Motion to Dismiss on this ground is **DENIED**.

---

[2] Triumph's attempt to distinguish *Falk* is not persuasive. That the plaintiffs in *Falk* alleged more evidence that General Motors had pre-sale knowledge of the defect, or that General Motors actively concealed that defect, has no impact on whether the factual allegations in the complaint adequately pled reliance.

7

### B. Duty to Disclose

To state an actionable claim arising out of an alleged omission, Plaintiffs must sufficiently plead that the defendant had a duty to disclose the information omitted. *See Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835 (2006), *as modified* (Nov. 8, 2006) ("[A]lthough a claim may be stated under the CLRA in terms constituting fraudulent omissions, to be actionable the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose."); *id.* at 838 (holding that the court "cannot agree that a failure to disclose a fact one has no affirmative duty to disclose is likely to deceive anyone within the meaning of the UCL"); *see also Chulick-Perez v. Carmax Auto Superstores California, LLC*, No. 13-cv-02329-TLN, 2014 WL 2154479, at *9 (E.D. Cal. May 22, 2014) ("For an omission to be actionable under the CLRA or UCL, it must be either 1) "contrary to a representation actually made by the defendant" or 2) "an omission of a fact the defendant was obligated to disclose.").

Under California law, a duty to disclose may arise in four circumstances:

> (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material fact.

*LiMandri v. Judkins,* 52 Cal. App. 4th 326, 337 (1997). In this case, Triumph argues that Duttweiler's claims must fail because the FAC does not allege: (1) "facts establishing that [Triumph] took active or affirmative steps to conceal material information from him," Mot. at 7; and (2) "facts supporting the inference that Triumph knew of the suspension defect before April 2007, when Duttweiler purchased his motorcycle," Mot. at 11-12.

#### 1. Active Concealment

The FAC alleges that, prior to Duttweiler's February 2014 crash, Triumph received complaints from three consumers concerning accidents attributed to the same suspension defect at issue in this case. FAC ¶¶ 22-23. Duttweiler argues that Triumph's inaction in the face of these complaints is sufficient to demonstrate active concealment because it "created the illusion that the

8

part was not defective." Opp. at 6 (citing *Johnson v. Harley-Davidson Motor Co. Group, LLC*, No. 10-cv-02443 JAM-EFB, 2011 WL 3163303, at *5 (E.D. Cal. Jul. 22, 2011) and *Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088, 1097 (N.D. Cal. 2007)). Neither case cited by Duttweiler supports this proposition. In both *Johnson* and *Falk*, the plaintiffs alleged that the defendants (in addition to receiving consumer complaints) both: (1) substituted broken defective parts with equally defective replacements; and (2) represented to consumers that those defective replacements corrected the problem. *See Falk*, 496 F. Supp. 2d at 1097; *Johnson*, 2011 WL 3163303, at *5. The FAC in this case alleges no similar affirmative actions or representations by Triumph.

At base, Duttweiler's position would collapse the "active concealment" inquiry into a simple question of whether other consumers had complained to the defendant before the plaintiff's purchase. That is not the law. "An allegation of active concealment must plead more than an omission; rather, a plaintiff must assert affirmative acts of concealment; e.g., that the defendant 'sought to suppress information in the public domain or obscure the consumers' ability' to discover it." *Taragan v. Nissan N. Am., Inc.*, No. 09-cv-3660 SBA, 2013 WL 3157918, at *7 (N.D. Cal. June 20, 2013) (quoting *Gray v. Toyota Motor Sales, U.S.A.*, No. 08-cv-1690 PSG, 2012 WL 313703, at *10 (C.D. Cal. Jan. 23, 2012)). Triumph's inaction in the face of the customer complaints alleged in the FAC does not rise to the level of an affirmative act of concealment necessary to impose a duty to disclose.

### 2. Pre-Purchase Knowledge

Triumph next argues that Duttweiler's claims fail on the ground that the FAC alleges no facts supporting the inference that Triumph knew of the suspension defect before April 2007, when Duttweiler purchased his motorcycle. Mot. at 11-12. "[U]nder the CLRA, plaintiffs must sufficiently allege that a defendant was aware of a defect at the time of sale to survive a motion to dismiss." *Wilson*, 668 F.3d at 1145; *see also Sigala v. CarMax Auto Superstores, LLC*, No. 14-CV-01451-SAB, 2015 WL 418526, at *8 n.2 (E.D. Cal. Jan. 30, 2015) ("Plaintiff has not pled facts to show that CarMax failed to disclose a fact of which it was aware. Therefore, Plaintiff has failed to state a claim under any of the three prongs of the UCL."). Conclusory allegations of pre-

purchase knowledge are not sufficient. *Tietsworth v. Sears, Roebuck & Co.*, No. 09-cv-00288-JF, 2009 WL 3320486, at *4 (N.D. Cal. Oct. 13, 2009) (finding conclusory the allegation that defendants were in a "superior position to know the truth about the [product]").

Duttweiler points to two facts in support of the inference that Triumph knew of the suspension defect prior to Duttweiler's purchase. First, the FAC alleges that several consumers complained to Triumph about the suspension defect shortly after Duttweiler purchased his motorcycle, which Duttweiler argues supports the inference that other consumers may have complained to Triumph about the suspension defect before his purchase. Opp. at 11. Second, Duttweiler argues that the fact that Triumph replaced the allegedly defective plates with a heavier steel version in its 2009 motorcycles suggests that Triumph knew of the defect at the time of his purchase 18-20 months before, because it "defies belief that a countermeasure for the defect was designed and tested and a re-engineered part was brought to market so soon after [his purchase] if Triumph had no knowledge of the defect at the time of [his] purchase." *Id*. at 11-12.

The Court agrees with Duttweiler. Although neither fact is conclusive, these allegations permit a plausible inference that Triumph was aware of the defect at the time Duttweiler purchased his motorcycle in 2007. For example, in *Falco v. Nissan North America Inc.*, the plaintiff alleged that the defendant "replaced the [allegedly defective] chain guide of the Timing Chain Tensioning System with a redesigned version of the part that does not suffer from the defect" and issued a service bulletin to its dealerships instructing them to replace defective components. No. 13-cv-00686-DDP, 2013 WL 5575065, at *6 (C.D. Cal. Oct. 10, 2013). While the complaint alleged that these events took place in 2006 and 2007, the Court still found that "[t]hese facts, if true, permit plausible inferences that [the defendant] was aware of the defect . . . in 2005 and 2006," which was sufficient to "create a reasonable likelihood that discovery will produce evidence that [the defendant] was aware of the alleged defect at the time it sold the vehicles to Plaintiffs." *Id.* at *6-7.

The same reasoning applies in this case. Although the gap between Duttweiler's April 2007 purchase and Triumph's 2009 redesign is marginally larger than that at issue in *Falco*, it is still sufficiently close in time to plausibly support an inference of pre-purchase knowledge.

*Compare Herremans v. BMW of N. Am., LLC*, No. 14-cv-02363-MMM, 2014 WL 5017843, at *18 (C.D. Cal. Oct. 3, 2014) (holding that "[t]he gap between the redesign of the water pump in 2012 and Herremans' purchase of her vehicle in 2008 is simply too great plausibly to suggest that BMW knew of the water pump defect in 2008."). The inference of pre-purchase knowledge is further supported by the detailed complaints made by customers to Triumph around the time of Duttweiler's purchase concerning identical failures of the exact same part at issue in this case. For example, Duttweiler alleges that two consumers contacted Triumph to notify it of crashes caused by fractured drop linkage plates in November 2007 and May 2008. *See* FAC ¶ 22. The FAC also alleges the existence of several online complaints concerning the suspension defect, which were posted less than two months after Duttweiler purchased his motorcycle. *See id*. ¶24. That complaints of identical crashes were made so soon after Duttweiler's purchase provides at least a plausible (though hardly overwhelming) inference that similar complaints were also made at some time before his purchase.[3]

This case presents a close question. Although the Court likely would not find a plausible inference of pre-purchase knowledge based on the 2009 redesign or the post-purchase complaints alone, when viewed in combination, they permit a plausible inference that Triumph was aware of the suspension defect at the time that Duttweiler purchased his motorcycle in April of 2007. Put another way, Duttweiler has done substantially more than provide a "formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555, and no more is required at this stage.

\* \* \* \*

While the FAC fails to allege facts that plausibly state a claim of active concealment, it does contain facts sufficient to create a plausible inference of exclusive knowledge. Accordingly, Triumph's Motion to Dismiss Duttweiler's claims for failure to adequately plead a duty to disclose is **DENIED**.

---

[3] Of course, the complaints create a stronger inference that Triumph had knowledge of the suspension defect after November 2007 at the latest. Accordingly, the arguments presented by Triumph in this motion likely would not apply to a member of the putative class who purchased their motorcycle after that time.

### C. Negligence

While the FAC asserts a negligence cause of action, *see* FAC ¶¶ 86-91, it is not entirely clear what type of negligence is alleged. On one hand, the cause of action characterizes Triumph's actions as a "failure to warn," *see* FAC ¶ 91 and Opp. at 20:12-13, which suggests a claim under the products liability doctrine of negligent failure to warn. On the other hand, the rest of the paragraphs comprising Duttweiler's negligence claim are more consistent with a negligent misrepresentation claim. Regardless of which cause of action Duttweiler intended to assert, the Court finds that the FAC does not allege facts sufficient to support either variety of negligence claim.

First, the economic loss rule bars a negligence claim premised on a "failure to warn" theory. To succeed on a claim of negligent failure to warn under California law, a plaintiff must prove that:

> (1) the defendant manufactured, distributed, or sold the product; (2) the defendant knew or reasonably should have known that the product was dangerous or was likely to be dangerous when used in a reasonably foreseeable manner; (3) the defendant knew or reasonably should have known that users would not realize the danger; (4) the defendant failed to adequately warn of the danger or instruct on the safe use of the product; (5) a reasonable manufacturer, distributor, or seller under the same or similar circumstances would have warned of the danger or instructed on the safe use of the product; (6) the plaintiff was harmed; and (7) the defendant's failure to warn or instruct was a substantial factor in causing the plaintiff's harm.

Jud. Council of Cal. Civ. Jury Instruction No. 1222. In not so many words, a cause of action for failure to warn of a dangerous product presupposes that the plaintiff or his property was injured by the product on account of that danger, not—as Duttweiler alleges in this case—that the plaintiff had to pay money in order to repair the defective product itself. *See Jimenez v. Superior Court*, 29 Cal. 4th 473, 483 (2002) ("[T]he economic loss rule allows a plaintiff to recover in strict products liability in tort when a product defect causes damage to 'other property,' that is, property *other than the product itself.* The law of contractual warranty governs damage to the product itself.") (emphasis in original); *see also Sater v. Chrysler Grp. LLC,* No. 14-cv-00700-VAP, 2015 WL 736273, at *13 (C.D. Cal. Feb. 20, 2015) ("The economic loss rule (in one of its forms) bars tort

1  claims that seek to recover only economic losses, that is, damage to a defective good caused by the
2  defect.") (citation omitted).

3  Second, any negligent misrepresentation claim would fail in this case because it would
4  necessarily arise from an alleged omission. "[A] negligent misrepresentation claim requires a
5  'positive assertion,' and hence 'omissions'—that is, nondisclosures—cannot give rise to liability
6  for negligent misrepresentation." *Mitsui O.S.K. Lines, Ltd. v. SeaMaster Logistics, Inc.*, 913 F.
7  Supp. 2d 780, 789 (N.D. Cal. 2012) (citing *Lopez v. Nissan N. Am., Inc.,* 201 Cal. App. 4th 572,
8  596 (2011).

9  Accordingly, the Court **GRANTS** Triumph's Motion to Dismiss Duttweiler's negligence
10 claim. While the Court is skeptical that Duttweiler can plead facts sufficient to state a claim for
11 negligence in this action, he will be given leave to amend.

### D.   Statute of Limitations

Triumph moves to dismiss all of Duttweiler's claims as untimely because he brought this action over seven years after he purchased his motorcycle, well beyond any of the statutes of limitations that apply to the claims asserted here. Mot. at 15-17. Although Triumph concedes that the discovery rule could potentially "salvage" Duttweiler's claims, Triumph argues that the FAC does not allege sufficient facts to show: "(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Id*. at 17 (citations omitted).

"[T]he discovery rule may be applied to breaches which can be, and are, committed in secret and, moreover, where the harm flowing from those breaches will not be reasonably discoverable by plaintiffs until a future time." *April Enters., Inc. v. KTTV,* 147 Cal. App. 3d 805, 832 (1983). Under the discovery rule, a "limitation period does not begin until a cause of action accrues, i.e., all essential elements are present and a claim becomes legally actionable. Developed to mitigate the harsh results produced by strict definitions of accrual, the common law discovery rule postpones accrual until a plaintiff discovers or has reason to discover the cause of action." *Glue-Fold, Inc. v. Slautterback Corp.,* 82 Cal. App. 4th 1018, 1029 (2000).

The Court finds that the FAC alleges sufficient facts to trigger application of the discovery rule. The suspension defect alleged in the FAC concerns the type of metal used to create a

13

structural component of the motorcycle. Apart from breaking off a chunk of that structural component to conduct metallurgic testing, or performing some sort of structural test, there does not appear to be a way for a consumer to discover the alleged defect in the part before the part breaks. FAC ¶ 35 ("[T]he Suspension Defect cannot be detected until it manifests"). In this case, Duttweiler discovered the allegedly defective part on February 1, 2014, when the rear of his motorcycle collapsed while he was riding on the freeway. *Id*. ¶¶ 38-40. Under the discovery rule, the statute of limitations ran from that date. Accordingly, none of Duttweiler's claims—which were first asserted in this action less than a year after that accident—are barred by their respective statutes of limitations.

Triumph's Motion to Dismiss each cause of action asserted in the FAC as barred by the applicable statutes of limitations is **DENIED**.

### E. Equitable Relief

Apart from civil penalties, which are not at issue here, the UCL and FAL provide for only equitable relief. *Korea Supply Co. v. Lockheed Martin Corp*., 29 Cal. 4th 1134, 1144 (2003); *see also In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 130 (2009) ("The remedies available in a UCL or FAL action are limited to injunctive relief and restitution."). However, there is no right to equitable relief or an equitable remedy when there is an adequate remedy at law. *See Prudential Home Mortgage Company v. Superior Court*, 66 Cal. App. 4th 1236, 1249 (1998) (holding that statutory relief under the UCL "is subject to fundamental equitable principles, including inadequacy of the legal remedy."). In this case, Duttweiler seeks damages under the CLRA for the exact same conduct that forms the basis of his UCL and FAL claims. Accordingly, in order to demonstrate some entitlement to equitable relief, Duttweiler was required to allege facts suggesting that damages under the CLRA alone would not provide adequate relief. Triumph argues that Duttweiler's UCL and FAL claims must be dismissed because the remedies provided by those statutes are exclusively equitable, and Duttweiler has not adequately alleged why legal damages under the CLRA (or his common law causes of action) are inadequate.

Duttweiler makes two counterarguments. First, Duttweiler rejects the existence of the "no adequate remedy" requirement entirely, observing that actions where both CLRA and UCL claims

were asserted have proceeded after review by the Ninth Circuit. Opp. at 16. Second, Duttweiler claims that injunctive relief is necessary because damages "would not protect unsuspecting ordinary consumers or the Plaintiff himself in this case, from future harm as long as these unsafe motorcycles remain on the road." *Id*. (emphasis omitted). The Court does not find either argument persuasive.

Duttweiler's first argument is a non sequitur. His citation to Ninth Circuit decisions where defendants did not challenge the assertion of both CLRA and UCL claims in no way establishes that a plaintiff may pursue equitable relief even where an adequate legal remedy is available. Courts routinely dismiss UCL claims at the pleading stage on account of the plaintiff's failure to plead facts demonstrating an entitlement to equitable relief. *See, e.g., Bird v. First Alert, Inc.*, No. 14-cv-3585 PJH, 2014 WL 7248734, at *6 (N.D. Cal. Dec. 19, 2014) (dismissing UCL claim based on a product's alleged safety defect "because [plaintiff] has an adequate remedy at law in her claim for damages under the CLRA"). This is true even where a plaintiff attempts to plead equitable relief in the alternative, as Duttweiler purports to do here. *See Rhynes v. Stryker Corp.*, No. 10-cv-5619 SC, 2011 WL 2149095, at *4 (N.D. Cal. May 31, 2011) ("Plaintiffs' argument that they will have no adequate remedy at law if their other claims fail is unavailing. Where the claims pleaded by a plaintiff *may* entitle her to an adequate remedy at law, equitable relief is unavailable.") (emphasis in original).

Second, the Court finds Duttweiler's argument concerning the necessity for injunctive relief to be overbroad, speculative, and, in any event, not fairly contained in the allegations of the FAC. Duttweiler acknowledges that Triumph no longer manufactures motorcycles with the allegedly defective cast aluminum drop linkage plates, and that it has not done so for at least half a decade. FAC ¶ 25. Accordingly, even accepting the truth of Duttweiler's allegations, there is no ongoing conduct for the Court to enjoin. Instead, Duttweiler appears to argue that he is entitled to injunctive relief that removes "these unsafe motorcycles" from the road, not because he would be riding them, but because he could be injured in a crash caused by the suspension defect in someone else's motorcycle. Opp. at 16. Duttweiler's position stretches standing for injunctive relief too far. *Schmier v. U.S. Court of Appeals,* 279 F.3d 817, 821 (9th Cir.2002) ("hypothetical,

speculative or other 'possible future' injuries do not count in the standing[ ] calculus"). Were Duttweiler correct, literally any individual could sue any defendant for injunctive relief concerning an alleged safety defect. For example, an owner of a Toyota motorcycle (or a pedestrian) is no less likely than Duttweiler to be injured in a pile-up caused by a third party's defective Triumph motorcycle. Similar claims of undifferentiated and speculative future harm have been rejected by courts at the pleading stage. *See Bird*, 2014 WL 7248734 at *5 (granting motion to dismiss UCL claim where plaintiff asserted "that she was exposed to harm not only by her purchase of the smoke alarms, but also 'as a member of the general public, who might be harmed where others use [the smoke alarms]'").

In short, Duttweiler has not alleged facts sufficient to suggest that he is entitled to equitable relief. Triumph's Motion to Dismiss Duttweiler's UCL and FAL claims on this basis is **GRANTED**.

## IV. CONCLUSION

For the foregoing reasons, Triumph's Motion to Dismiss is **DENIED** in all respects apart from its challenges to Duttweiler's negligence cause of action and the availability of equitable relief under the UCL and FAL. Triumph's Motion to Dismiss as to those two issues is **GRANTED**. The FAC's negligence, UCL, and FAL claims are **DISMISSED WITH LEAVE TO AMEND** for the reasons discussed above. Duttweiler may file a Second Amended Complaint no later than **21 days** from the date of this Order.

**IT IS SO ORDERED.**

Dated: August 19, 2015

HAYWOOD S. GILLIAM, JR.
United States District Judge